UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:17-cr-18-Orl-40KRS

NOOR ZAHI SALMAN

## GOVERNMENT'S MOTION FOR
## AN ORDER REVOKING DEFENDANT'S RELEASE

The government moves this Court to enter an Order revoking the order entered by United States Magistrate Judge Donna M. Ryu commanding the release of the defendant, NOOR ZAHI SALMAN. Further, the government requests that this Court enter any additional stay of the Magistrate Judge's order of release that may be necessary for this Court's consideration of this motion.

On January 12, 2017, a grand jury in the Middle District of Florida, Orlando Division, indicted the defendant for: (a) aiding and abetting the attempted provision and provision of material support to a foreign terrorist organization, that is, the Islamic State of Iraq and the Levant (ISIL), in

violation of 18 U.S.C. §§ 2339B(a)(1) and 2; and (b) obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3).  Doc. 1.[1]

Following her arrest, the defendant appeared before Magistrate Judge Ryu in the United States District Court for the Northern District of California, Oakland Division, on January 17 and 18, 2017.  Docs.-mj 2 & 7.  The United States sought detention, and the defendant moved to continue the detention hearing for two weeks, until February 1, 2017, a motion that Magistrate Judge Ryu granted.  *Id.*  A further hearing was held on February 1, 2017, at which time, following argument of the parties, the matter of detention was set over until a later date for a psychological evaluation of the defendant to be completed.  Doc.-mj 18.  A final detention hearing was held on March 1, 2017, at which time, Magistrate Judge Ryu ordered the defendant released.  Magistrate Judge Ryu also stayed her Order releasing the defendant for 48 hours, or until Friday, March 3, 2017, at 11:00 a.m., Pacific Standard Time, at the request of the government, to allow for the government to seek review of the Order by this Court.  Doc.-mj 29.

Over the government's objection, the matter has also been set for a further hearing before Magistrate Judge Ryu on March 9, 2017, to address the

---

[1] Docket entries in this case are referred to as "Doc."  Docket entries in the Magistrate Case, that is, case no. 4:17-mj-70058-MAG (N.D. Cal.), are referred to as "Doc.-mj."

defendant's removal pursuant to Fed. R. Crim. Pro. 5(c)(3)(D).  The defendant refused to waive the removal hearing because counsel wished to ensure that the defendant did not get transported to Orlando before the detention issue was conclusively decided and because counsel wished to research whether he could lodge an objection to the validity of count two of the indictment as part of the removal proceeding.  The government objected to the further hearing because the issue of the defendant's identity as the person named in the indictment has been conclusively established by (1) the entry of a plea of not guilty by the defendant; (2) the extensive briefing and argument by defense counsel about the defendant's involvement in the charged offenses; and (3) the identification of the defendant by multiple family members who were presented to the Court as sureties.  Nonetheless, the Court held that the defendant was entitled to be heard at later date, i.e., March 9, 2017, on the issue of removal.

At the detention hearings in this matter, the United States moved for the defendant's pretrial detention pursuant to 18 U.S.C. §§ 3142(e)(3)(C) and (f)(1)(A) & (B).  A rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case because there is probable cause to believe that the defendant committed an offense identified in 18

U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed.  18 U.S.C. § 3142(e)(3)(C).

At the conclusion of the hearing on March 1, 2017, Magistrate Judge Ryu denied the United States' motion and ordered the defendant released on GPS monitoring, home incarceration, and a $500,000 bond secured by the homes of the defendant's mother and uncle, among other conditions.  Doc.-mj 29.  Pursuant to 18 U.S.C. § 3145(a)(1), the United States now seeks an order from this Court revoking the defendant's release.  Further, the government requests that this Court enter any further stay of the Magistrate Judge's order of release that may be necessary for this Court's consideration of this motion.

## STANDARD OF REVIEW

The Magistrate Judge's release order is subject to plenary review by this Court; the Court must undertake an independent review of the case, enter its own findings in writing, and set forth the reasons supporting its decision.  *See United States v. Hurtado*, 779 F.2d 1467, 1480-81 (11th Cir. 1985) (citing, *inter alia*, *United States v. Beesley*, 601 F. Supp. 82, 83 (N.D. Ga. 1984)).  This "independent review" has been characterized as a "*de novo* review."  *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987) ("In *Hurtado*, we held that *de novo* review requires the court to exercise independent consideration of all

facts properly before it and to include written findings of fact and a written statement of the reasons for the detention.").

Notably, *de novo* review does not require this Court to hold a *de novo* hearing, as long as the Court exercises independent consideration of all the facts properly before it. *Id.; United States v. King*, 849 F.2d 485, 489-90 (11th Cir. 1988) (discussing *Hurtado* and *Gaviria*). Moreover, this Court is entitled to base its *de novo* review on proffered evidence rather than sworn testimony. *Gaviria*, 828 F.2d at 670 (finding no error where district court based its *de novo* review of detention order on the parties' memoranda of law and a transcript of the proceedings before the magistrate judge, in which both parties proffered evidence instead of presenting sworn testimony). *Cf. id.* at 669 (holding that "the government as well as the defense may proceed by proffering evidence subject to the discretion of the judicial officer presiding at the detention hearing" and observing that the legislative history of the Bail Reform Act indicates that Congress anticipated that "the use of sworn testimony [would] be the exception and not the rule").

## ARGUMENT

### A.    The Statutory Presumption Applies

As an initial matter, the statutory presumption in favor of detention applies, and the Magistrate Judge incorrectly found that the defendant had

produced sufficient evidence to overcome both the presumption and other factors that weigh heavily in favor of detention.

Pursuant to 18 U.S.C. § 3142(e), a judicial finding of probable cause to believe that a defendant has committed certain types of offenses—including any crime listed under 18 U.S.C. § 2332b(g)(5)(B) punishable by a term of imprisonment of ten years or more—gives rise to a rebuttable presumption that the defendant constitutes a danger to the community and that no pretrial release condition or combination of conditions may be imposed to reasonably assure the defendant's appearance as required or the safety of the community.

"In order to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment." *King*, 849 F.2d at 487-88. Count one of the indictment charges the defendant with a crime listed under 18 U.S.C. § 2332b(g)(5)(B), that is, aiding and abetting the attempted provision and provision of material support to ISIL, in violation of 18 U.S.C. § 2339B, punishable by a life term of imprisonment, so the statutory presumption applies.

Once the statutory presumption is so triggered, "it becomes the task of the defendant to come forward with evidence to meet [her] burden of production—that is, evidence to suggest that [s]he is either not dangerous or

not likely to flee if turned loose on bail." *Hurtado*, 779 F.2d at 1479.

However, even if the defendant presents sufficient evidence to rebut the

statutory presumption, the effect of the presumption is not eliminated. *King*,

849 F.2d at 488.  As the Eleventh Circuit has explained:

> [U]se of the word "rebut" in this context is somewhat of a misnomer "because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relevant to factors listed in section 3142(g)."

*Id.* at 488 (quoting *United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985)).

*See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (explaining that

"[t]he presumption remains as a factor because it is not simply an evidentiary

tool designed for the courts[;] [i]nstead, the presumption reflects Congress's

substantive judgment that particular classes of offenders should ordinarily be

detained prior to trial").

Here, the defendant proffered evidence of her husband's alleged abuse,

the affidavits of friends and family, and her lack of overall danger in support of

an argument that she does not constitute a flight risk or danger to the

community.  But, as discussed herein, such proffered evidence falls far short of

justifying a finding in favor of release, particularly in light of the nature of the

charged offense and the statutory presumption which "remains in the case as

an evidentiary finding militating against release." *King*, 849 F.2d at 488.

### B.      The Nature and Circumstances of the Offenses

Because the offense charged in count one of the indictment is a federal crime of terrorism, this factor weighs heavily in favor of detention. *See* 18 U.S.C. § 3142(g)(1) (specifically requiring the court to consider whether the offense is "a Federal crime of terrorism"). In this matter, the Magistrate Judge dramatically minimized this factor, noting simply that the crime in count one was serious. This analysis did not apply the proper weight to this factor, particularly in light of the fact that the defendant is charged with a federal crime of terrorism. This error is sufficient basis alone to determine that the defendant should be detained, contrary to the Magistrate Judge's finding.

The case of *United States v. Stone* is particularly instructive on this factor. In *Stone*, multiple defendants were charged with "conspiracy to levy war against or to oppose by force the authority of the United States government and related offenses." 608 F.3d at 943. The Eighth Circuit, reversing a district court's decision to release several defendants, noted that at least one of the crimes charged against the defendants qualified as a crime of terrorism and holding that, "[a]s the district court (under)stated, 'this factor ... weighs in favor of detention.'" *Id.* at 948.

Count one of the indictment alleges that the defendant knowingly aided and abetted her husband, Omar Mateen, in Mateen's attempted provision and

provision of material support and resources to ISIL, a designated terrorist organization actively engaged in terrorism, and the death of multiple victims resulted; specifically, 49 people were murdered, and many more victims were seriously injured.  *See United States v. Sheikh*, 994 F. Supp. 2d 736, 740 (E.D.N.C. 2014) (citing *United States v. Al–Arian*, 280 F. Supp. 2d 1345, 1351 (M.D. Fla. 2003)) (finding that the allegation of attempting to provide material support to a designated terrorist organization "weighs heavily against the defendant" because "[i]t is not a common violent crime, but rather terror that rips civilization's fabric").  Here, the Magistrate Judge wrongly focused on the fact that the defendant was charged with aiding and abetting, as compared to the defendant herself being charged with providing material support or with conspiracy.  However, the charge of aiding and abetting the provision of material support is itself a federal crime of terrorism, and treating it as drastically different for the purposes of detention was in error.

The gravity of the offense is further reflected in the penalty that the defendant faces.  If convicted on count one of the indictment, she faces up to life in prison.  The sheer magnitude of that potential sentence alone renders her a flight risk.  *See United States v. Kandasamy*, No. 06 CR 616 (RJD), 2008 WL 2660610, at *3 (E.D.N.Y. July 3, 2008), *aff'd sub nom. United States v. Thavaraja*, No. 08-3589-CR, 2009 WL 692113 (2d Cir. Mar. 18, 2009)

(concluding that a defendant charged with conspiring to provide material support to foreign terrorist organizations potentially "faces very serious charges, the likelihood of a long prison term, and has an incentive to flee" because he faced a potential 30-year sentence, notwithstanding his "clean criminal history").

### C.   The Weight of the Evidence Against the Defendant

Moreover, the strength of the evidence against the defendant weighs in favor of detention.

On June 12, 2016, the defendant's husband, Omar Mateen, killed 49 innocent victims and injured more than 50 other people.  He did so on behalf of ISIL, pledging his allegiance to ISIL and its leader, Abu Bakr al-Baghdadi. During the detention hearing, the United States proffered evidence showing that both before and during the attack, the defendant aided and abetted her husband in this mass-murder and repeatedly lied to law enforcement during and after the attack in an effort to obstruct the FBI's ongoing investigation.

The Magistrate Judge erroneously diminished the government's evidence in part because it was proffered.  For example, the Magistrate Judge called into question the admissions by the defendant because the government proffered those admissions, rather than offering other forms of evidence of those statements.  This analysis was in error because the Magistrate Judge

accepted and credited proffered evidence presented by the defendant, such as the affidavits of family, friends, and even a teacher who taught the defendant over 10 years ago.[2] Further, the Magistrate Judge stated in the hearing on February 1, 2017, that detention proceedings in front of her generally proceeded by proffer. Thus, the Magistrate Judge incorrectly held the government to a higher standard before crediting its evidence than she did the defense.

### 1. The Defendant Aided and Abetted Her Husband by Participating in Casing Activity.

The United States' proffered evidence shows that the defendant had direct knowledge that Mateen was going to attack a club in Orlando in the name of ISIL. During interviews with law enforcement, the defendant stated that for the past two years, Mateen had watched ISIS videos—including ones that depicted beheadings and recruitment videos. The defendant also stated that Mateen watched these videos in front of their son.

The defendant admitted during an interview that on June 11, 2016, when Mateen left for Orlando, Mateen was "pumped up," had an ammunition backpack and his gun, and told her, "This is the one day." The defendant further admitted that when her husband left the house she knew he

---

[2] *See* Doc.-mj 16-2.

was going to commit the attack.  This evidence amply demonstrates the defendant's advance knowledge that Mateen planned to commit an attack in Orlando in the name of ISIL.

Moreover, the defendant told law enforcement that she and her husband had cased various destinations to stage an attack and discussed them together.  On June 4, 2016, Mateen told the defendant that he wanted to go look at "City Place," a shopping, dining, and entertainment center in Palm Beach, Florida.  Together, the defendant and Mateen drove around City Place.  As they slowly cruised around, observing the numerous clubs within City Place, Mateen asked the defendant, "How bad would it be if a club got attacked?"

The defendant further admitted to law enforcement that just days later, on June 8, 2016, she, the defendant, and their child went to Orlando and visited Disney Springs and a restaurant.  Upon leaving Disney Springs, Mateen asked the defendant, "What would make people more upset an attack on downtown Disney or a club?"

The defendant also admitted to law enforcement that she went with her husband to Orlando and drove around the Pulse night club prior to the attack. The defendant again acknowledged her behavior in this instance in her motion

for bond, although she is now trying to allege that "she was at most a reluctant passenger" during this incident.  Doc.-mj 16 at 11.

As to the circumstances of the defendant's law enforcement interviews, the Magistrate Judge incorrectly discounted admissions by the defendant in these interviews because, in her view, the defendant's admissions could be vulnerable to suppression on various bases.  However, discounting the strength of the government's case based on potential suppression is grounds for revocation of the release order.  For instance, in *United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992), the Eighth Circuit upheld a district court's revocation of a release order by a magistrate judge where the district court "conclud[ed] that the magistrate judge erred in disregarding" evidence that was subject to a supposed suppression challenge "before the evidence was found inadmissible by a final order of the court."  The Court further held that it "agree[d] with the district court that it is appropriate to consider challenged evidence in detention hearings." *Id.*

### 2. The Defendant and Mateen's Aberrational Spending in June 2016 Is Evidence of the Defendant's Aiding and Abetting.

The United States proffered evidence of the couple's financial activity during the period immediately preceding the murders that reveals the defendant's knowing participation in her husband's plan to provide material support to ISIL.  Mateen and the defendant had a modest household income;

Mateen earned approximately $30,000 annually, and the defendant cared for their child full-time.  In light of their limited financial resources, their monthly average expenditures were only approximately $1,500 prior to June 2016.

But within an 11-day period preceding the attack, the defendant and her husband jointly spent approximately $30,500—more than a full year's salary for the family—through $25,000 in purchases made on Mateen's credit cards or otherwise on credit and a $5,500 cash withdrawal.  The purchases during that 11-day period included the AR-15 assault rifle and Glock firearm that Mateen used during the attack, other firearm supplies, and over $8,000 worth of jewelry for the defendant.

On the day of the attack, the defendant discussed the recent, aberrant, and exorbitant expenditures during an interview with law enforcement. Specifically, she stated that she knew Mateen had purchased a diamond ring for her, clothing, many toys for their son, and a rifle and ammunition.  (In fact, the defendant was present for a number of these purchases, notably the purchase of a diamond ring worth over $7,000.)  The defendant also stated that Mateen had withdrawn a significant amount of cash, of which she admitted receiving $1,000. The evidence indicates that the defendant and Mateen's sudden spate of spending was calculated, and that the defendant

took these items—such as the diamond ring—from Mateen to support their

child after Mateen's attack given her lack of employment and little savings.

In addition, on June 1, 2016, the defendant and her husband went to

PNC Bank, where Mateen held an individual account, and added the

defendant as a beneficiary to the account, meaning that she would have access

to the funds in the account only if Mateen died.  During that visit, a PNC

Bank representative told the couple that the defendant could only gain access

to the account if she had Mateen's death certificate.  On the day of the attack,

during her interviews with law enforcement, the defendant repeatedly asked

for her husband's death certificate.  The defendant's participation in her

husband's death preparations is powerful evidence of the defendant's

knowledge of and participation in her husband's plan to commit an attack.

### 3. The Defendant Aided and Abetted Mateen in Committing the Terrorist Attack by the Creation of a False Cover Story.

The United States proffered evidence that the defendant aided and

abetted Mateen's terrorist activity, both before and during the attack, by

creating a false cover story for him.  Specifically, while Mateen was en route

to Orlando from the couple's home in Fort Pierce, on the night of the attack,

the defendant formulated a false cover story for Mateen that he was out to

dinner with a friend known to Mateen's family.  The defendant directed

Mateen to use that cover story, and both she and Mateen then used that story

with Mateen's family to assist him in avoiding detection prior to and during his attack.

Then, immediately following the attack, the defendant used the same lie when speaking to officers of the Fort Pierce Police Department and special agents of the FBI concerning Mateen's whereabouts, the degree of his religious radicalization, and the defendant's knowledge of Mateen's murderous plans.

In sum, the United States' proffered evidence against the defendant is strong, and includes evidence that the defendant participated in casing potential attack locations, participated in preparations for her husband's attack and death, and created a false cover story for him. This factor weighs heavily in favor of detention.

### D.   The History and Characteristics of the Defendant

The defendant's actions in this case show her to be a calculating and cold person, to a degree that enhances her danger to the community. For example, in the aftermath of the largest mass shooting in United States history, her primary concern was not the victims of the shooting, or even her deceased husband, but rather how she would gain access to her husband's bank accounts. These essential characteristics of the defendant, when combined with the other factors set forth at the detention hearing and in this

motion, outweigh the defendant's other characteristics, such as the fact that she has no prior criminal history.[3]

Other factors—which weigh in favor of detention—include the fact that the defendant has no recent history of employment.  In addition, her residential ties to the Northern District of California are recent, and her current ties to the Middle District of Florida (apart from the charged conduct) are virtually nonexistent.  And her young son is not yet of school age, which enabled her to easily relocate with him multiple times—including across the country—during the months since the attack.  Thus the defendant has demonstrated both the means and the motivation to uproot herself and her son where she found it personally expedient to do so.

Further, the defendant's mother acknowledged at the detention hearing on March 1, 2017, that she owns a vacant apartment in Palestine, to which the defendant has travelled in the past.  Additionally, the defendant's uncle, who is her custodian, owns commercial property in Palestine and travels there on

---

[3] Lack of criminal history is just one of many factors to be considered, and it alone is not dispositive.  *See United States v. Rodriguez*, 950 F.2d 85, 88-89 (2d Cir. 1991) (rejecting notion that government must present a record of violence or dangerous conduct to justify pre-trial detention on dangerousness grounds and noting that "[a]lthough a prior record of violence eases the government's burden of showing dangerousness, it is not essential").  *Cf. Stone*, 608 F.3d at 950 (noting that "courts have never required a prior criminal record before ordering detention").

an annual basis.  These foreign resources and ties demonstrate that the defendant has the means and ability to flee.

Both as to this factor and as to the defendant's dangerousness, the defendant has provided statements from friends and family members seeking to describe her positive characteristics; several of them also offer either financial surety and/or to serve as a custodian.  These descriptions of the defendant, all of which are notably devoid of any information about the offense conduct, are insufficient to overcome the presumption of detention and the other facts weighing in favor of detention.

In sum, the defendant's personal characteristics weigh in favor of detention; while some aspects of the defendant's history and characteristics may seem to weigh in favor of release, they are insufficient to overcome other factors that weigh in favor of detention, even with conditions of electronic monitoring and home incarceration.  *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (internal quotation marks and citation omitted) ("Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills.").

###   E.   The Nature and Seriousness of the Danger to any Person or the Community

As demonstrated to a horrifying degree on June 12, 2016, the defendant poses a significant risk of serious harm to the community.  She is charged with

aiding and abetting the attempted provision and provision of material support

to ISIL, and obstructing justice after the attack was carried out.  Because of the

first charge alone, she is presumed (at the direction of Congress) to constitute a

danger to the community, regardless of her lack of any prior record.  *See* 18

U.S.C. § 3142(e)(3)(C); *see also Stone*, 608 F.3d at 945 ("Instead, the

presumption reflects Congress's substantive judgment that particular classes of

offenders should ordinarily be detained prior to trial.").  That presumption

always "remains in the case as an evidentiary finding militating against

release, to be weigh[ed] along with other evidence relevant to factors listed in

section 3142(g)."  *King*, 849 F.2d at 488.

The evidence proffered by the United States clearly and convincingly

demonstrates the defendant's willingness to set aside any concern for or

allegiance to her family, community, or country, in favor of aiding and

abetting her husband's provision of material support to one of the most (if not

the most) violent terrorist organizations in the world.  This weighs heavily in

favor of a finding of dangerousness.  *See United States v. Hir*, 517 F.3d 1081,

1091 (9th Cir. 2008) (concluding that fourth factor weighed in favor of a

finding of dangerousness because government's proffered evidence clearly and

convincingly established defendant's willingness to aid his brother, knowing

that such aid supported terrorist activities).

During the hearings on detention and in pre-hearing briefing, the defendant has attempted to argue that she poses no present danger to the community and that the government can posit no specific danger that she presently poses, including that the government does not argue that she is herself a supporter of a terrorist organization.  This argument ignores, however, that the government is not required to present evidence that the defendant personally is a member of ISIL in order to show that she is a danger to the community.  Rather, the danger posed by the defendant is demonstrated by the violent and substantial harm this defendant has already participated in, a danger far greater than that posed by most, if not the vast majority, of defendants who are routinely detained based on far less severe criminal conduct.  *See, e.g., Stone*, 608 F.3d at 947 & n.6 (reversing a district court's decision to release several defendants involved in a "seditious conspiracy" partly on the basis of the nature of the charges, noting that "run-of-the mill drug dealers" are routinely detained, "even without any indication that the defendant has engaged in violence").

During the detention hearing, the defendant presented argument concerning the effect of domestic violence that she purportedly suffered at the hands of Mateen.  To the extent that the Court is inclined to consider such evidence as a counterweight to the presumption of dangerousness, the Court

20

should find that such argument does not favor release.  As described at the hearing on February 1, 2017, the evidence proffered in support of the argument, specifically, the Danger Assessment referred to in Doc.-mj 17, is incomplete and facially erroneous.  For example, the Assessment was incorrectly scored, presumably resulting in a higher "score" than is presented in the defendant's pleadings.  Further, should the defendant persist in this defense, the United States intends to present expert testimony concerning these same issues at trial.  *Cf. United States v. Hite*, 76 F. Supp. 3d 33, 39 (D.D.C. 2014), *aff'd*, 598 F. App'x 1 (D.C. Cir. 2015) (concluding that because parties planned to present competing expert testimony at trial concerning certain defenses, it was "purely speculative how much weight the jury [would] give either party's expert witness," and that the proffered summary of the defense's expert testimony—in combination with possible government expert—did not outweigh other strong evidence against defendant).

## CONCLUSION

As noted at the outset, this case carries a presumption of detention. That presumption, in combination with the factors set forth in 18 U.S.C. § 3142(g), establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community and strongly favors the defendant's detention.

Because the defendant's future appearance and the safety of the community can only be reasonably assured by her continued pretrial detention, the United States requests that this Court revoke the Magistrate Judge's order of release.  Additionally, the government requests that this Court enter a further stay of the order of release if necessary for this Court's consideration of this motion.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:   *s/ Sara C. Sweeney*
Sara C. Sweeney
Assistant United States Attorney
USA No. 119
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:       Sara.Sweeney@usdoj.gov

By:   *s/ James D. Mandolfo*
James D. Mandolfo
Assistant United States Attorney
Florida Bar No. 96044
400 W. Washington St., Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:       James.Mandolfo@usdoj.gov

**U.S. v. NOOR ZAHI SALMAN**          **Case No. 6:17-cr-18-Orl-40KRS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 2, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

      N/A

I hereby certify that on March 2, 2017, a courtesy copy of the foregoing was e-mailed to the following:

      Charles D. Swift, Esquire (counsel for Defendant)
      Haitham Amin, Esquire (counsel for Defendant)
      Linda Moreno, Esquire (counsel for Defendant)

                          *s/ Sara C. Sweeney*
                          Sara C. Sweeney
                          Assistant United States Attorney
                          USA No. 119
                          400 W. Washington Street, Suite 3100
                          Orlando, Florida 32801
                          Telephone:  (407) 648-7500
                          Facsimile:   (407) 648-7643
                          E-mail:        Sara.Sweeney@usdoj.gov

                          *s/ James D. Mandolfo*
                          James D. Mandolfo
                          Assistant United States Attorney
                          Florida Bar No. 96044
                          400 W. Washington St., Suite 3100
                          Orlando, Florida 32801
                          Telephone:  (407) 648-7500
                          Facsimile:   (407) 648-7643
                          E-mail:        James.Mandolfo@usdoj.gov