```
                                                              1

 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                  ORLANDO DIVISION

 3  - - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA,    :
 4                                :
                                  :
 5        Plaintiff,              :  Case No.:
                                  :  6:17-cr-18-Orl-40KRS
 6   vs.                          :
                                  :
 7   NOOR ZAHI SALMAN,            :  Orlando, Florida
                                  :  April 20, 2017
 8        Defendant.              :  10:30 a.m.
                                  :
 9                                :
                                  :
10  - - - - - - - - - - - - - - -X

11            TRANSCRIPT OF INITIAL CONFERENCE
            BEFORE THE HONORABLE PAUL G. BYRON
12              UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15    Counsel for Plaintiff:        James Mandolfo
                                    Sara Sweeney
16                                  Kevin Nunnally

17    Counsel for Defendant:        Charles Swift
                                    Fritz Scheller
18

19

20

21  Proceedings recorded by mechanical stenography.
    Transcript produced by computer-aided transcription.
22

23  Court Reporter:   Suzanne L. Trimble, CCR, CRR, RPR
                      Federal Official Court Reporter
24                    401 West Central Boulevard, Suite 4600
                      Orlando, Florida 32801
25                    e-mail: trimblecourtreporter@gmail.com
```

1         P R O C E E D I N G S

2         THE COURTROOM DEPUTY:  United States of America v.

3    Noor Zahi Salman, Case No. 6:17-cr-18-Orlando-40KRS.

4         Counsel, please state your appearances starting with

5    counsel for the United States.

6         MS. SWEENEY:  Good morning, Your Honor.  Sara

7    Sweeney, James Mandolfo, and Kevin Nunnally on behalf of the

8    United States, and with us is Special Agent Adam Godfrey of

9    the F.B.I.

10        THE COURT:  Good morning.

11        THE COURTROOM DEPUTY:  And for the defense.

12        MR. SWIFT:  Good morning, Your Honor.  Charles Swift

13   and Fritz Scheller on behalf of Ms. Salman.

14        THE COURT:  Good morning.

15        MR. SCHELLER:  Good morning, Your Honor.

16        THE COURT:  Thank you all for being here.  We're

17   here for the status conference.  First off, let me note that

18   the parties had prepared a Joint Notice regarding the initial

19   conference.  I appreciate your working together on getting

20   those dates coordinated.

21        What I would like to do this morning is go through

22   some of the dates set forth in your Joint Notice, give you a

23   sense for my questions I may have as to some of the terms that

24   are embedded in your notice, discuss with you the timing that

25   I think will work to accomplish those various goals, and then

**3**

1   we'll turn to the protective order and any other issues we

2   might be able to take up.

3         Let me begin by noting the parties have recommended

4   a trial date for March 2018.  There is not in the record, at

5   least that I've seen, a waiver of speedy trial through

6   March 2018.  So I assume that will be forthcoming, assuming

7   the March trial term is agreeable to the parties.  It seems

8   like a workable term.  It seems that's a little bit further

9   out than I had anticipated, but when we look into some of the

10  issues that you all have to resolve and that I have to work on

11  between now and the trial start and the number of jurors that

12  we'll need to subpoena in this case or summons, and I will

13  discuss that with you as we get to that point, March seems

14  like a realistic date of accomplishing these goals in a

15  reasonable fashion.  However, there will need to be a waiver

16  of speedy trial through that time frame.

17        Taking these one at a time, let's start by

18  discussing the initial disclosures.  I know you all have read

19  the criminal schedule order that's entered in this case at

20  docket entry 38 that was filed on the day that Ms. Salman has

21  appeared in this district.  It sets forth a number of time

22  frames.  Some of those disclosure time frames are fairly

23  quick.  It's not uncommon for them to be modified depending on

24  the nature of the case involved.  You all have agreed to

25  certain modifications, some of which make sense, some of which

1    I think may need to be adjusted.

2         So my understanding is on April 26th of this year

3    the Government will disclose any oral or written or recorded

4    statements of Ms. Salman.  On May 3rd there will be the first

5    production of the records, documents, tangible objects, et

6    cetera, envisioned in Section 1D, E, H, I, J, L, and M of the

7    criminal scheduling order.

8         Have the parties discussed, and I assume you have,

9    the manner in which the transfer of this information will be

10   accomplished?  In other words, is it electronically stored?

11   Are we looking at having to copy hard drives?  What is the

12   nature of the production?

13        MS. SWEENEY:  Your Honor, we did not discuss that

14   precise issue.  However, the Government has been working since

15   the time of the Indictment and even before on digitizing the

16   evidence in this case.  So we will be providing everything to

17   counsel in a digital format, Bates stamped, indexed for word

18   searching, everything that we can.  Obviously, there are some

19   physical items that we will make available for inspection and

20   things like that, but in general everything -- most things

21   will be produced to defense counsel in an electronic manner on

22   one or more hard drives.

23        THE COURT:  Do you anticipate any documents that are

24   turned over to the defense to be Bates, so you can track your

25   productions?

*5*

1      MS. SWEENEY:  They are Bates.  Yes, Your Honor.  We

2   will Bates the documents that are on the hard drives.

3      THE COURT:  And as you both know, the requirement

4   for producing evidence includes the requirement to make it

5   available for inspection and copying, as opposed to turning

6   over a digital or hard copy.

7      With a May 3rd deadline for the initial disclosure

8   by the Government, that's coming pretty quickly.  If all of

9   the discovery in your possession currently, meaning your

10  possession, custody, or control or obtained from Ms. Salman

11  cannot be produced electronically or in hard copy by May 3rd,

12  has there been an agreement by the parties as to when the

13  documents or other objects will be made available for

14  inspection, so you have a date pinned down for the technical

15  support people or investigators on behalf of the defense or

16  defense counsel themselves coming to view that information?  I

17  raise that because there are a number of other dates that

18  follow.  I want to make sure that we're able to stay on

19  target.

20     MS. SWEENEY:  Yes, Your Honor.  No, we did not

21  discuss a specific date for any sort of inspection of physical

22  evidence.  Certainly the Government can be flexible.  We can

23  do that whenever would be convenient.  That's not a problem.

24     THE COURT:  Certainly would have to occur on or

25  before May 3rd, since that's the disclosure date.

**6**

1          MS. SWEENEY:  Yes, Your Honor.

2          THE COURT:  Mr. Swift or Mr. Scheller, do you

3    anticipate yourselves personally going to inspect any exhibits

4    or objects or documents that are made available for your

5    inspection, or do you anticipate sending a team to do so?

6          MR. SWIFT:  I anticipate either myself or one of the

7    attorneys, plus an investigator, to inspect any physical

8    evidence, Your Honor.

9          THE COURT:  I need for you all, meaning the defense

10   team and the prosecution team, then, to confer sometime today

11   regarding when that date will take place.

12          This way, if there's any disagreement as to the

13   protocol to be employed in viewing the evidence or the

14   location or manner in which the disclosures will be made, that

15   can be brought to my attention or to the magistrate's

16   attention well in advance of May 3rd.

17          These are fairly quick dates, but it to some extent

18   triggers the next date, which is the May 12th key evidence

19   date.  So please confer with each other today.  If you cannot

20   come up with an agreed time, or if there is a protocol the

21   Government is suggesting that the Defense finds to be

22   objectionable for some reason, bring that to the magistrate's

23   attention no later than Monday, which is Monday of next week.

24          You can file a short motion.  The magistrate will

25   hold a hearing, if necessary, and determine what the

*7*

1    appropriate protocol is.  I just don't want to have a

2    disagreement as to the mechanics of how you get to see the

3    evidence, which will then impact everything else we're about

4    to talk about.

5         All right.  If any of you believe any of these

6    suggestions are not workable, now is the time to speak up.

7         So there will be ESI, Electronically Stored

8    Information, that's hopefully searchable.  The balance of the

9    evidence will be available for inspection on or before May 3rd

10   with procedures and protocols to be agreed upon by the

11   parties, and any disputes will be resolved by the Court with a

12   notice filed no later than Monday.

13        Let's turn now to the next date, which is the

14   May 12th date contained in the joint notice.  May 12th date or

15   event is captioned, *United States identification of*, quote,

16   *key evidence.*

17        Have the parties defined the term *key evidence*,

18   Ms. Sweeney?

19        MS. SWEENEY:  No, no, Your Honor.  We have not --

20   or, I did not discuss the specific definition of that with

21   Defense counsel.  But in this instance -- and, obviously, this

22   is not a date set forth in the criminal scheduling order, but

23   in an effort to increase the efficiency of the trial

24   preparation process, we will provide a list of what we

25   consider key evidence and basically by Bates stamp or

1    identification of physical item to the Defense counsel.  And I

2    would anticipate that that list would be supplemented as our

3    trial preparations continued.  So we would commit to

4    continuing to supplement that list with Defense counsel as our

5    own trial preparations continued.

6              It's not as limited as things that I would be

7    exhibits.  It's broader than that.  But, of course, the United

8    States would reserve the right to use any evidence that it

9    produced, but we will endeavor to identify anything that we

10   think would be key to our case in chief to the defense

11   counsel.

12             MR. SCHELLER:  Your Honor, I just thought of

13   something.  And we appreciate the Government providing that to

14   us.  I would suggest for the Government's benefit -- well, and

15   also our benefit -- that the inspection date be extended after

16   the key evidence date.  It just makes sense.  I think it's

17   gonna expedite the process of the inspection.

18             THE COURT:  You mean the inspection of May 3rd?

19             MR. SCHELLER:  Yes, yes.

20             THE COURT:  There is a provision in the standing

21   criminal schedule order.  I think it's subpart IW, paragraph

22   W, that envisions a continuing duty to disclose by both

23   parties, that upon having evidence that's material to your

24   case in chief or the defense in the case of the Government's

25   discovery of favorable evidence, must be turned over within

1   seven days, if I recall correctly, of coming into possession,

2   custody, or control.  So there's a notion of a continuing

3   rolling duty to disclose.

4           Where things get complicated is if there becomes

5   disagreement as to when something came into the possession,

6   custody, or control of the offering party and whether or not

7   the disclosure on this rolling basis has caused prejudice of

8   some sort.  It's impossible to anticipate that.

9           So what I envision on May 3rd is that everything

10  that the Government currently has that meets any of the

11  categories of evidence set forth in the criminal scheduling

12  order, which is pretty inclusive, will be either produced or

13  made available.

14          By the 12th the Government will produce what they at

15  this juncture envision to be their evidence likely to be used

16  in their case in chief, without it being limited.

17          Certainly, if the defense perceives that they have

18  not had the opportunity to view everything that the Government

19  has in its possession by May 3rd, you all can work out

20  additional dates.  That's envisioned in the criminal

21  scheduling order, that you can work cooperatively, with the

22  caveat being that extensions agreed to by and between the

23  parties cannot affect the other deadlines that we have agreed

24  upon.

25          If you believe we are going to bump up against other

1    deadlines, then you need to bring it to my attention, so we

2    can discuss how we're going to reconcile those conflicts.  So

3    I think the very long answer to your short question was, there

4    will be additional inspections.

5              MR. SCHELLER:  Okay.

6              THE COURT:  It just has to happen in a manner that

7    doesn't affect the other disclosure deadlines, for example

8    experts, which are August 1st.

9              MR. SCHELLER:  Thank you.

10             THE COURT:  The key evidence notion, is that

11   reciprocal as well?  Is the defense doing the same, or is it

12   only Government?

13             MS. SWEENEY:  We did not request that or discuss it,

14   Your Honor.  That's just something that we've committed to

15   doing.

16             THE COURT:  Okay.  So that's a unilaterally

17   undertaken obligation.  And I'm assuming there's no

18   consequence if the defense perceives that there was

19   quote/unquote key evidence disclosed after May 12th that

20   somehow may be well outside that window.

21             MS. SWEENEY:  I'm sorry.  I don't want to speak for

22   them, Your Honor.  I don't think that that creates any

23   obligation because it's not something that we're required to

24   do under the law at all.  Instead, it is an attempt at -- you

25   know, good faith attempt to improve the -- I know you've read

1   the protective order motion.  And it wasn't in our notice, but

2   we are producing, you know, over 100,000 pages of discovery

3   and many, many hours of video, and, obviously, all of that we

4   will give and make available to defense counsel.  There were

5   12 search warrants.  There's, there's -- there's a lot of

6   evidence.  But we want to try to make things a little bit

7   easier.  So I don't think it creates any obligations or any

8   prejudice if something is not immediately indicated as a piece

9   of key evidence.  But I do hope it will increase the

10  efficiency of trial preparation for all of us.

11          THE COURT:  Fair enough.  In civil cases we call key

12  evidence *hot documents*, documents that are likely to be seen

13  throughout the course of litigation, and I understand that's

14  the notion.  You're trying to highlight the ones that at this

15  juncture you anticipate will be likely used in your case in

16  chief.

17          MS. SWEENEY:  Yes, Your Honor.

18          THE COURT:  Let's turn to the June 12th reciprocal

19  disclosure by the Defense.  The Defense has customarily,

20  according to the criminal scheduling order, would be

21  disclosing roughly at the same time as the Government, but at

22  this juncture you all have agreed to about a six-week

23  difference between the Government's initial disclosure and the

24  Defense disclosure.

25          The same questions go to the defense.  Do you have a

1    sense, yet, as to the format you'll be producing?  Are there

2    any protocols that you envision that would be conditions to

3    the disclosure such that there needs to be agreement?

4              MR. SWIFT:  We anticipate producing everything in

5    electronic important, Bates stamped, and then to -- where

6    there are original documents, provide the equal opportunity

7    for the Government's inspection on a -- as a requested date.

8              The bulk, the sum of evidence, while I certainly

9    presume that there will -- I can represent there will be a

10   defense case in this trial, and there will be -- we will have

11   productions.  It will pale in the amount.  So I think it will

12   be very manageable.  We asked for additional time and agreed

13   to it, so we could have gone through the original documents in

14   those six weeks, to have an idea so that we make -- again, as

15   we become aware of it, we're gonna do the same thing, the

16   seven-day requirement, as soon as we're aware of a document,

17   we will disclose it, or come into possession of it, but I

18   wanted to have sufficient time to review the evidence, so that

19   I didn't have a document in my possession that I thought I

20   would -- that we would need to disclose and have omitted it on

21   the next day because I just hadn't anticipated that part of

22   the case.

23             THE COURT:  So today when you all meet to discuss --

24   and this can be in person or telephonically, however you

25   prefer -- to discuss the parameters of the inspection for the

1    Government's evidence, please do the same as to your

2    disclosure which is set for June 12th.

3            Again, my concern is you all working out specific

4    dates for the Government or its agents to come view the

5    evidence that will not be produced electronically, which

6    they're able to inspect and copy, including any procedures or

7    protocols that might be attendant to that disclosure.  So that

8    way, if there's agreement as to what those protocols are, that

9    can be hammered out well in advance.

10           There is a suggested date of July 14, 2017, for

11   motions to compel discovery.  There is no doubt that a party

12   who believes that discovery has not been produced in

13   accordance with Rule 16 can file a motion to compel at the

14   appropriate juncture.

15           July 14th gives me some concern as an initial motion

16   to compel date, and let me tell you why.  If you have

17   simultaneous expert disclosures August 1st and you have a

18   motion to compel July 14th that may be germane to your expert

19   rendering his or her opinion for either side, if the motion is

20   filed on July 14th, there's a 14-day response window.  There

21   has to be time for a hearing perhaps, an order directing the

22   disclosure of additional information, which leaves you

23   virtually no time for your expert to digest that information

24   and include it into a report.  That then will bump the expert

25   disclosure reports potentially back and everything from there

*14*

1    flows.

2           So it appears to me that I have no problem with the

3    July 14, 2017, motion to compel deadline.  However, if either

4    party perceives that there is discovery that's necessary for

5    their expert's use in preparing their report and meeting their

6    obligations, they need to act accordingly, recognizing what

7    I've just described, the briefing schedule.

8           So if you have expert disclosures August 1st and

9    either party perceives there's some sort of evidence that's

10   germane to the preparation of that report, they're gonna need

11   to back up that motion to compel timetable accordingly to

12   allow time for a response, a hearing, production, use by your

13   expert.  I'm going to leave that up to you all to discern when

14   that would be appropriate, based on the experts you may choose

15   to use in the case.

16          So July 14th is fine, but I'm just cautioning

17   everyone that in light of an August 1st expert disclosure

18   date, you need to be mindful that if you file a motion to

19   compel that last day, you may get evidence that's not really

20   helpful to your use for your expert.  So if you come in later

21   saying to me, *I need to move my expert disclosure date because*

22   *I just received responsive documents*, the first thing you're

23   going to hear me ask you is, *When did you move to compel?*

24   *When did you become aware of the need?  And why didn't you do*

25   *it sooner?*  And if those answers aren't satisfactory under the

1   good cause rubric, which is a pretty high standard, you're not

2   gonna find a very receptive audience, right?  We're gonna have

3   deadlines that stick.  So let's use your best judgment as to

4   when you need to advance that motion to compel.

5          August 1st is the expert disclosure.  It appears to

6   me from the report that you all submitted that expert

7   disclosures are simultaneous.  So the initial expert

8   disclosures will be simultaneous.  Whoever the Government

9   plans to use as an expert will disclose his or her report.

10  The Defense will do the same.

11         And I'll just remind the parties that

12  Rule 16(a)(1)(G) sets forth the sum and substance of an expert

13  report.  The summary provided by the expert under the

14  paragraph must describe the witness' opinions, the basis and

15  reasons for those opinions, and the witness' qualifications.

16  This is not a bullet format for opinions.  In other words, the

17  report should not leave any real surprise for the party who

18  received the expert report.

19         If either of you perceive that the expert report

20  that you've received fails to satisfy Rule 16, if the expert

21  report simply states, *I'm an expert in forensic* -- fill in the

22  blank -- *I have the following qualifications and I'm going to*

23  *give the final opinions*, that may not be sufficient because

24  you have to give the basis and the reasons for those opinions.

25  That should be pretty comprehensive.

1        What I don't want to have happen is a motion to

2    strike the report coming in the latter stages of the case

3    because there's no time then to cure it and to deal with all

4    of the other impacts that that would have.

5        So when both sides disclose their experts on

6    August 1st and the experts file their written report which

7    you'll serve upon your opposing counsel, upon getting that

8    report and reading it, it's gonna be pretty obvious to you

9    whether it meets the criteria of Rule 16, that is whether it

10   sets forth the basis and reasons for the opinions, the

11   qualifications, and the summary of the opinions.

12       If you perceive that it doesn't meet Rule 16, then

13   you need to file that objection within five days, five

14   business days.  So you'll get the report on August 1st.  You

15   have five days from that date to file an objection to the

16   report as being noncompliant with Rule 16.

17       There'll be a response because, yet again, there's a

18   14-day response.  You don't have to take 14 days, but you have

19   that right.  Now we're into middle August before the response

20   comes in.  If that report is perceived to be deficient, there

21   may be very promptly an order from me or from the magistrate

22   directing the proponent of the expert to submit an amended

23   report that has all of the correct information and meets the

24   spirit and the purpose of Rule 16.

25       MR. SCHELLER:  Your Honor --

1          THE COURT:  Yes, sir.

2          MR. SCHELLER:  -- can I just have one moment?  Can

3    we have one moment?  I just want to discuss something very

4    briefly.

5          THE COURT:  Go right ahead, Mr. Scheller.

6          (Discussion off the record.)

7          MR. SCHELLER:  I apologize, Your Honor.  We just

8    wanted to discuss -- in light of the Court's comments about

9    the motion to compel the expert reports, if we should have

10   adjusted those dates.  I wanted to bring it to their attention

11   before we had gone down too far, but we're okay.  Thank you.

12         THE COURT:  Okay.  Thank you very much.

13         So any objection, just to reiterate, to the experts'

14   disclosures on August 1st will be filed within five days.  If

15   you frame it as a motion to strike, that may be premature,

16   since we have a March trial date.  File it as an objection to

17   the Rule 16 disclosure, state what you perceive to be

18   deficient, attach a copy of the report, if it's not otherwise

19   filed, so that I don't have to go fish for it in the record.

20   I will review the report or a magistrate will review the

21   report, depending if I'm in trial or not, and there will be a

22   prompt ruling as to whether or not that report meets the

23   definition of Rule 16 with a deadline for getting it amended.

24   So your experts need to be available.

25         The next issue or date in your chronology is the

1  defendant's motion to file -- filing of a motion to dismiss,

2  rather, of Count 2 of the Indictment for lack of venue.

3  Count 2 is the allegation of obstruction of justice.  Count 2

4  alleges that Ms. Salman knowingly engaged in misleading

5  conduct towards another person or persons, that is the F.B.I.,

6  with the intent to hinder, delay, or prevent communication to

7  federal law enforcement officers and judges of the United

8  States certain information, in violation of 18 U.S.C. 981,

9  Section (a)(1)(G) and 28 U.S.C. 2461, Subpart (c).

10        I understand the gist of a motion to dismiss for

11 lack of venue, which arises under Article Three of the United

12 States Constitution.  If I recall correctly, it's Section 2,

13 Clause 3 in the Sixth Amendment to the United States

14 Constitution.

15        Venue issues are not new.  I'm not saying that

16 they're not important.  They're certainly important.  But

17 there are a number of cases.  I think even the Eleventh

18 Circuit and the Second Circuit and many other circuits have

19 tackled the issue of where venue lies in obstruction cases.

20        A motion filed to dismiss Count 2, it's been

21 suggested by the defense that that motion should be filed

22 August 1st.  The Indictment would have been available, I

23 suspect, to the defense since Ms. Salman's initial appearance

24 in California sometime ago, and normally motions are filed

25 much sooner.

1        It would appear to me that there's no particularly

2   compelling reason, unless you articulate one for me, to delay

3   in filing a motion to dismiss Count 2 for lack of venue.  It

4   strikes me as a purely legal argument.  At least, I don't

5   expect there will be facts deduced, since it's a motion to

6   dismiss, and it goes to the plain language of the Indictment.

7        It makes more sense to me to have the motion filed

8   on or before June 12th.  This allows 14 days for a response.

9   We have the issue resolved one way or the other in July,

10  before your expert reports are due, in case that impacts any

11  of those.  I don't know if it will or won't.

12        That is ample time.  June 12th is not quite two

13  months from now, but seven weeks from now, roughly, and if

14  it's a purely legal issue, this is not a new or novel area of

15  the law; there is a well-developed body of case law dealing

16  with venue in cases similar to this case; and I believe it can

17  be briefed adequately by June 12th.

18        Is there any compelling reason why June 12th is not

19  an achievable date?

20        MR. SWIFT:  Your Honor, I just put it at the end of

21  discovery.  I actually -- I could easily make June 12th.

22        THE COURT:  June 12th it will be then.  The response

23  will be in the normal course set forth in the local rules.

24        The next deadline recommended by the parties is

25  general motion deadline under Section 2, Subpart B of the

**20**

1   criminal scheduling order for September 1, 2017.  This is

2   separate and apart and from Daubert which, of course, we all

3   know are the challenges to expert qualifications.  So this

4   would be any other motion, other than venue, other than

5   Daubert.

6         I don't profess to know all of the details of the

7   respective cases.  It's too soon in the process, but I imagine

8   that would include a motion to suppress, motions on certain

9   defenses, or the propriety of certain defenses and the like.

10        My concern with the September 1st deadline, for

11  example, say motion to suppress, once again, there will be

12  response.  Now we're into mid September.  If it's a

13  suppression hearing, there's likely -- a suppression motion,

14  rather, there will be a hearing.  Evidence will be taken.

15  We're now moving into possibly October.  And it's getting busy

16  for you all by October.

17        If there are a number of motions, we now have to

18  deal with the evidentiary hearings on each and every one of

19  those, the briefing schedule on each and every one of them,

20  and getting any hearings that may be necessary, and this is

21  all in advance of Daubert, which in and of itself may take

22  some time.

23        As a result, it seems to me that September 1st is a

24  lengthy period of time, at least for some motions to suppress.

25  By the 26th, if I'm not mistaken, the Government will have

1    turned over any statements that Ms. Salman purportedly made.

2    To the extent there's a motion to suppress related to the

3    statements, that issue is going to be ripe well before

4    September.

5           I can't anticipate what other motions you may have

6    because you may not know them yet either, since you haven't

7    received all of the discovery, and that's a fair challenge for

8    you to have to face.

9           Do the parties at this point have any sense for what

10   the pretrial motions will be, other than suppression, which I

11   imagine is involved in this case.  It's involved in many

12   cases.

13          MR. SWIFT:  One of the reasons, Your Honor -- yes, I

14   anticipate.  One of the reasons we had set the general motions

15   at that point in time was the anticipation that some of those

16   motions may also have expert testimony and the expert

17   disclosures, for instance a potential change of venue motion

18   we would anticipate.  I agree with Your Honor.  Deciding the

19   venue, a legal question, makes sense well in advance, and I --

20   as we look at the schedule, it probably would be almost

21   coincidental to the next set of motions being brought

22   June 12th.

23          The September 1st date, though, does allow experts

24   in this area, and the reason I pushed that off was because I

25   anticipated experts playing in that role.  Yes, there are

1   potential <u>Daubert</u> challenges, even with them, at the time of

2   the suppression, but I felt that the Court could handle that

3   particularly because it's only the Court hearing the

4   testimony, and it makes it much easier under those

5   circumstances.

6           THE COURT:  Would you anticipate -- I don't want you

7   to disclose any aspect of your defense you're not comfortable

8   in disclosing.  So please at the present accept that premise.

9   But in terms of a motion to suppress statements, for example,

10  do you anticipate, at least hypothetically, that an expert

11  might be engaged in that?  Because if there are other motions

12  for which experts are necessary, I can see framing those

13  motions after expert disclosure to accommodate their

14  preparation.  But if the suppression hearing is based on the

15  traditional notions of a suppression hearing, it seems that

16  that could be moved up beforehand.

17          MR. SWIFT:  There is -- my belief is in this case

18  without -- hypothetically having -- after I review all of the

19  discovery, that there's a 4th, a 5th, and a Miranda issue

20  entitled in her statements.  So, yes, I'm well aware that it's

21  the reasonable juror.  You don't need a reasonable person.

22  You don't need to expert to explain who that is and with the

23  fourth.  But with the involuntary, then expert testimony does

24  become, I believe, relevant on those persons because now one

25  is taking into account individual characteristics and as the

1    Supreme Court has required this Court to do.  So I could

2    bifurcate it, but it doesn't seem to be an efficient method of

3    doing it.

4            My experience would be that a Court would want to

5    look at all three aspects at one time because the testimony

6    will be repetitive from all parties.  And so that was my

7    reasoning for breaking that out, and I don't think that comes

8    as a surprise to anybody.

9            THE COURT:  Would you anticipate expert testimony

10   for a change of venue?

11           MR. SWIFT:  Well, on change of venue, maybe on the

12   publicity parts and those things that have happened in the

13   area and to do testimony on how those affect and the venire.

14           THE COURT:  My concern is this:  That some of the --

15   some expert preparation may not be directly linked to the

16   discovery disclosure.  Let me just be more precise.  For the

17   suppression issue, if you're going to retain an expert to deal

18   with any unique characteristic of Ms. Salman that you believe

19   bears on any of the points that you've alluded to, I would

20   imagine, I could be wrong, that once the statements have been

21   turned over and any reports of investigation related to those

22   statements are turned over, that your expert is probably

23   prepared to render an opinion, along with any evaluation that

24   the expert may choose to conduct.

25           That may happen -- it might be possible for that to

1   happen on a faster track than waiting for discovery, all of

2   the other expert disclosures and the like because that may be

3   an expert you have no intention of using at trial, you only

4   intend to use for that suppression hearing.  I don't want to

5   try to predict every aspect of the case.

6          MR. SWIFT:  That part on an expert used at trial is

7   the part where the voluntariness or accuracy of any statement

8   that would be eventually admitted, should the Court decide,

9   would probably, at least in my experience in doing this type

10  of case, is a repetitive exercise and, again, would be a trial

11  expert.  I would expect the Government to have a counter

12  expert.  I have never done a trial where they did not.  And I

13  think both sides are anticipating those things.

14         And so because it wraps itself around three -- were

15  this solely Miranda, I would agree with Your Honor, you know,

16  if it were solely an in-custody issue that's a fact and law

17  issue, which expert testimony does not apply to, but the

18  difficulty comes in here is that, you know, we end up

19  bifurcating I believe, Your Honor, and that's -- as much as we

20  would want to be efficient, that's not extraordinarily

21  efficient.

22         I would say that we tried to set it far enough out

23  so that by October, mid-October, we had resolution on this

24  issue, and that's still almost -- at least five months from

25  trial, and that gives some time for those things to happen

1   inside -- I understand that normally we would want to wipe

2   this out a little bit earlier, but I do believe that it is

3   efficient.

4          THE COURT:  I agree with you.  I think it is

5   efficient.  Your reasons for suggesting the September 1st

6   date, for all of the parties suggesting it, makes sense.

7          We'll have the expert disclosures simultaneously

8   August 1st, motion deadlines September 1st.  In light of the

9   motion deadlines and the reasons in part that you've

10  identified for wanting the motion deadlines to occur after

11  expert disclosures, I think it makes sense for the rebuttal

12  reports of experts to not be due October 2nd but rather be due

13  September 1st, a month after the disclosure of experts.

14         So what we'll have is disclosure of experts by both

15  parties August 1st, rebuttal reports 30 days later, which

16  should be more than enough time for your respective experts to

17  read the other reports and render any opinions they may have.

18         If it's a rebuttal -- maybe you have to retain an

19  expert to form a rebuttal because it may not be in the

20  wheelhouse of the expert you've disclosed.  In which case,

21  you'll still have 30 days to retain the expert, get the

22  materials to him or her, get that rebuttal report out.

23         If for some reason your rebuttal report is such that

24  it's challenging to meet that four-week turnaround time

25  because you didn't already have an expert hired for that

1  particular issue, then you simply need to demonstrate that

2  fact to me, and we'll extend the time frame accordingly.

3          So just to be clear, if both parties have the same

4  types of experts on both sides of the case, they're gonna both

5  disclose on August 1st.  You're gonna have rebuttals a month

6  later.  That's easy.  They're already there.  They know the

7  case.

8          But if you don't have one-for-one experts on

9  August 1st, one of you may have to or both of you may have to

10  retain an expert to rebut a report that's come out.  That

11  builds in a little delay.  You have to find them.  You have to

12  vet them.  You have to get them the material.  They have to

13  tell you what they need.  They may have follow-up from you.

14  They need to draft a report.  They have other things they're

15  doing.  You may not be able to make that 30 days, in which

16  case I'm receptive, obviously, to giving you a period that

17  makes sense.  I just need you to articulate why you need more

18  time and a deadline that you can accomplish it within.  So

19  there's flexibility built in there because it may not be as

20  simple as it sounds sitting here.  So the September date will

21  stand for the motions.

22          MS. SWEENEY:  Your Honor?

23          THE COURT:  Yes, ma'am.

24          MS. SWEENEY:  I'm sorry.  Going back a couple of

25  steps.  In the parties' notice, underneath the disclosure of

1  expert reports there was also a disclosure of notices that was

2  included there.

3           THE COURT:  Yes.

4           MS. SWEENEY:  So that would include the, you know,

5  psych, psych issues, alibi --

6           THE COURT:  Yes.

7           MS. SWEENEY:  I wanted to be sure that was on the

8  record as well.

9           THE COURT:  Yes.  I apologize.  I overlooked that.

10  I meant to mention it, but, yes, August 1st has the deadlines

11  for the other disclosures.  Would that -- do you all

12  envision --

13           MR. SWIFT:  That is appropriate, Your Honor.

14           THE COURT:  And do you all envision that includes

15  404(b), or is that going to be on a different track?

16           MS. SWEENEY:  Your Honor, we are committed to doing

17  an initial disclosure of 404(b) on May 3rd.

18           THE COURT:  All right.

19           MS. SWEENEY:  And, again, supplementing within the

20  seven-day period.  If anything about that should change, we'll

21  consult with defense counsel and then present that to Your

22  Honor.

23           THE COURT:  Yes.  Thank you.  That is in fact the

24  second point you had on your joint suggestion.

25           All right.  So we have the rebuttal expert

1   disclosure September 1st, absent good cause.  Then the <u>Daubert</u>

2   motions you all have suggested December.  If we have rebuttals

3   in September or thereabouts, September perhaps into a little

4   bit thereafter depending on your needs, <u>Daubert</u> motions in

5   December seems to me to be a bit late.  And let me tell you

6   why I feel that way.

7          If you file a <u>Daubert</u> motion on December 1st, by mid

8   December you're responding, and we have to have a hearing

9   time.  An opinion has to be written by me that articulates my

10  basis for finding one way or the other.  You're now well into

11  July and your trial is -- January, rather, and your trial is

12  starting not long thereafter.

13         So if part of the opinions are stricken, or not --

14  but if part of the opinions are stricken, if it's a partially

15  granted/partially denied <u>Daubert</u> challenge, you have to adjust

16  accordingly, both sides, and you're not leaving yourself a lot

17  of time to do so.

18         It would appear to me that if you have rebuttal

19  reports out by September 1st, that you should be prepared to

20  file a <u>Daubert</u> challenge within 30 days, which would be

21  October 2nd is actually the first business day.  Again, this

22  is gonna have a bit of a caveat.  If your rebuttal report is a

23  little delayed because you did not have an expert of the type

24  previously retained, then we'll be backing up that <u>Daubert</u>

25  challenge to 30 days from that disclosure.  We'll make it

1   October 2nd as it stands right now for <u>Daubert</u> motions,

2   recognizing, again, that if the disclosure rebuttals is

3   continued a bit, that the <u>Daubert</u> challenge would be 30 days

4   after that rebuttal report.  So it leaves a little bit of

5   leeway.

6          I will be entering an order by the way, folks, that

7   has all of these dates in it, just so you know.

8          Motions in limine were the next issue.  The parties

9   suggest all motions in limine by January 31st.  Again, by the

10  time you have a response to motions in limine, you're now in

11  the middle of February.  You have a hearing.  You're gonna be

12  bumping right up to your trial.  That seems to me to be a long

13  time for motions in limine.

14         I think a more reasonable time frame is

15  November 13th, which is the middle of November for motions in

16  limine with responses by November 30th.  This way you have

17  rulings on these issues, and if a hearing needs to be held,

18  you have this sorted out in December.

19         I would like you all to have 60 days to focus on

20  your case without interruption because you're gonna need it,

21  so that you're prepared to move into the trial in an orderly

22  fashion.

23         So let's plan motions in limine for November 13th,

24  responses by the 30th.  I'll rule on them.

25         Of course, as with everything in litigation, if

1    something comes up that you can't possibly have envisioned for

2    the November 13th deadline, motions in limine serve us all,

3    and I want to be available to deal with those.  I just want to

4    make sure we've acted with diligence in getting to them.  So

5    there's always the reasonable good cause showing to deviate

6    from this script.  This script is to make sure that we're all

7    on task.  It's not meant to gut the system.  The process is

8    designed to be resolving these evidentiary issues outside the

9    presence of the jury, and I'm more than available.

10          Let me talk to you -- and that concludes your

11   suggested schedules.  Let me talk to you a little bit about

12   jury questionnaires.  In a case of this type, I imagine that

13   we will be summonsing somewhere between 800 and 1,000 jurors

14   from the middle district.  I think it makes sense for us to

15   have a proposed questionnaire that we mail out with the

16   summons to each juror.

17          There have been juror questionnaires used in a

18   number of cases.  I would like the parties to submit their

19   proposed questionnaire to me.  I'll take a questionnaire

20   submission from each of you.  I'll look at them and see where

21   we have consistency.  I have my own idea of the typical things

22   of biographical information and the like, any issue of

23   pretrial publicity and so forth.

24          We will come to an agreement on the jury

25   questionnaires before we issue those summonses.  Because of

1    the nature of how long it takes to get out that volume of

2    summonses and to get the questionnaires back and to deal with

3    people who may have moved or didn't answer it completely and

4    the like, I think we need to have a questionnaire figured out

5    in the month of August, which means that if it's feasible --

6    and I can't speak to your trial commitments elsewhere.  If

7    it's feasible, it would be helpful to have your proposed

8    questionnaires by July 3rd.

9              That may not be feasible, but we have to have it

10   out -- I think the summons have to be out by September 1st, by

11   September 1st, and I'll explain why I think so in just a

12   moment after you all confer.  Go right ahead.

13             MR. SCHELLER:  I apologize, Your Honor.

14             THE COURT:  That's fine.  Go right ahead.

15                  (Discussion off the record.)

16             MR. SWIFT:  Your Honor, after conferring, we're in

17   concurrence.  We can do a July 3rd time.

18             MS. SWEENEY:  And we can as well, Your Honor.

19             THE COURT:  Very good.  It doesn't have to be

20   picture perfect because there's going to be a final one.  What

21   I want is just like you would submit proposed voir dire

22   questions, you can put it in a format that's fairly generic.

23   It can just simply be *notice of proposed*, you know, *jury*

24   *questionnaire*.  You just -- recognize, of course, we will

25   elicit all of the biographical information.  So try to focus

1   your energy on things you think are specific to the case that

2   are of concern to you, and then the biographical material will

3   be, no doubt, covered by the questionnaire we put together.

4          The reason I would like it July 3rd is, I want to

5   get your submissions, review them, come up with a draft

6   questionnaire, circulate it, get your responses to the

7   circulated questionnaire to see if there's any area that you

8   perceive is glaringly missing, or if I choose to not ask a

9   question one of you have submitted, we can discuss why.  I

10  would like to have that final proposed questionnaire by the

11  latter part of August, so we can mail all of this out by

12  September.

13         By October, at some point in time, we're gonna have

14  to set aside two or three days, once the questionnaires come

15  back, for all of us to meet and discuss which responses we

16  perceive require that person to be excused from further

17  consideration.  That way we don't call in 1,000 people to talk

18  to.  We can look at the questionnaires, and there may be

19  certain questions or responses that cause all of us to

20  conclude that this person should be excused from further

21  considerations.  We can set those aside.

22         Now when we get to jury selection, we have a group

23  of people who have not already been determined to be not well

24  suited for this particular case.  And that's gonna take time.

25  Because if you imagine, if we have 8 or 9 hundred of these

1   things to read and they're 20 or 25 pages long, even if it's

2   the same answer, they're going to be handwritten responses

3   likely.  So we have to plow through them individually and then

4   come together to be able to discuss our thoughts.

5          We may have an easy pile number one of the ones we

6   all agree on.  So I'm gonna want you all to give me a list.

7   We'll do it by juror number.  In advance, you'll want to

8   give -- I'll give you further detailed instructions on this as

9   we get closer.  But I'll want a list of who you think should

10  be excused without getting into really why.

11         Those that you all agree on I'll review, and if I

12  think you're right, that's the end of that.  The ones we have

13  disagreement over we'll discuss, and then we'll have that

14  third pile of people we think should be interviewed more

15  closely.

16         And that way, when we get to jury selection, which

17  will take some time in this case, we will have narrowed that

18  field considerably.  But this is gonna take preplanning on

19  everyone's part, which is why we need to get it sooner rather

20  than later.  All right.  If that sounds reasonable, we'll go

21  that way.

22         I think that concludes the general outline of how

23  the case will evolve.

24         There is at docket entry 41 the unopposed motion for

25  protective order.  There was a proposed order attached at

**34**

1   docket entry 41-1.  My understanding is there's no objection.

2   If there is no objection, then I anticipate, or expect rather,

3   that I'll enter that order today.  Is there any agreement by

4   the defense with the language of --

5            MR. SWIFT:  There is not, based on the material

6   being disclosed.

7            THE COURT:  Very good.  So that's how we'll deal

8   with it.

9            If either side is going to submit a motion of any

10  kind that is going to have as an attachment material which

11  contains personal information of a victim or alleged victim or

12  may be graphic in nature, then that should be submitted under

13  seal.  That attachment can be submitted under seal.

14           So follow the local rules.  You'll do a notice of

15  filing, you know, a motion.  All you'll have to do is state

16  that it's of sensitive material.  I'm not gonna second guess

17  you on that.  And then you'll file it under seal, so I can

18  review it in a manner that protects the privacy of all of the

19  individuals concerned.

20           MR. SWIFT:  I would ask, too, we've talked about the

21  suppression hearing.  I would tend to submit but if the

22  Government is also submitting, that all materials under that

23  be submitted under seal, so that --

24           THE COURT:  I agree.  That should be simple enough.

25           MS. SWEENEY:  I'm sorry.  I didn't hear one word you

1  said.

2      THE COURT:  Motions in support of a suppression

3  hearing to be filed under seal.  You can always -- I would

4  rather be abundantly cautious, and if either party perceives

5  that something is filed under seal incorrectly, we can always

6  go back and unseal.  You just can't reverse the other way

7  quite as easily.

8      MS. SWEENEY:  Yes, Your Honor.

9      THE COURT:  Is there a motion by the defense, at

10  least an oral motion at this point for waiver of speedy trial

11  through March 31, 2018?

12      MR. SWIFT:  There is, and if you will accept that

13  motion orally --

14      THE COURT:  I will.

15      MR. SWIFT:  -- it is so made.

16      THE COURT:  Yes.  And the record should reflect

17  Ms. Salman is present.  And I know you've discussed that with

18  her.

19      As a result, let me make the interest of finding

20  that I'm required to make.  After considering all of the

21  factors, including those set forth in 18 U.S.C. 3161(h)(7)(B)

22  and for the reasons stated on the record, I find the interests

23  of justice are served by granting the continuance, and this

24  outweighs the interests of the public and the defendant in a

25  speedy trial.  I therefore determine that from today's date,

1   which is April 20, 2017, through March 31, 2018, is excludable

2   pursuant to 18 U.S.C. 3161(h).

3           I believe that is all we can accomplish this

4   morning.  Is there anything else either side would like to

5   bring to my attention?

6           MR. SWIFT:  If we could, I would like to set a trial

7   certain date.  It helps me with other courts.

8           THE COURT:  This will absolutely be a trial certain

9   date.  I can tell you every trial that I've set so far has

10  been a trial certain date.  This is no different.  What I

11  would anticipate is us picking the jury -- or, starting to

12  pick the jury on the first day of March, obviously March 1st,

13  which I believe is a Thursday; is that right?  We could start

14  picking the jury on Thursday.  It will take us -- let's assume

15  it takes two or three days to pick a jury.  You would be

16  putting on evidence starting roughly the week of the 6th.

17  This is anticipated to be a five-week trial.  So you're going

18  into April.

19          Now, alternatively we could try, if everyone's

20  calendar works, to start picking the jury -- I'll tell you

21  what, let's just stick with March.  That makes the most sense.

22          So we'll start the jury selection March 1st, and

23  then trial will begin immediately thereafter.  If there's some

24  unique scheduling issue with witnesses that requires a day or

25  two between selection and the start of trial, we can do that.

1   I just like to have those two events as close as possible.

2           I anticipate using an anonymous jury, not for any

3   reason other than to ensure the privacy of the jurors, since I

4   expect there would be media attention.  We will discuss how

5   that would unfold.  I don't anticipate sequestering them, just

6   having them appear by number for all public purposes; not

7   amongst you all, obviously you'll know their names and all

8   their biographical information; but in public session, they'll

9   be referred to by a juror number.  It just allows them to have

10  greater privacy until the case is concluded.

11          Fair enough?  All right.  Well, thank you very much.

12  I appreciate --

13          MS. SWEENEY:  Your Honor, I'm sorry.

14          THE COURT:  Yes, ma'am.

15          MS. SWEENEY:  I did want to raise two other

16  issues --

17          THE COURT:  Go right ahead.

18          MS. SWEENEY:  -- that you had noted in your order.

19  First, you asked for the parties to advise you if there were

20  any FISA or CIPA issues.

21          THE COURT:  Yes.  I'm sorry.  I meant to ask of

22  that.

23          MS. SWEENEY:  There are -- I don't anticipate any

24  FISA issue, and I don't anticipate any CIPA filings.  You also

25  asked about Rule 15 depositions.  Neither of the parties

**38**

1   anticipate Rule 15 deposition at this time.

2          THE COURT:  Very good.  If that need changes, you'll

3   bring it to my attention.  Mr. Scheller?

4          MR. SWIFT:  No, Your Honor.

5          THE COURT:  Thank you all.  I appreciate you working

6   together.  Thank you.  We're at recess.

7       (WHEREUPON, this matter was concluded at 11:20 a.m.)

8

9                          *   *   *

10

11                  CERTIFICATE OF REPORTER

12

13   I certify that the foregoing is a correct transcript of the
     record of proceedings in the above-entitled matter.

14

      /s/ Suzanne L. Trimble                5/23/17
15   Suzanne L. Trimble, CCR, CRR, RPR        Date
     Official Court Reporter
16

17

18

19

20

21

22

23

24

25