**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.	CASE NO: 6:17-cr-18-Orl-40KRS

NOOR ZAHI SALMAN

### ORDER

This cause comes before the Court on Defendant Salman's Motion to Dismiss Count Two for Lack of Venue, (Doc. 54), filed June 12, 2017. The Government filed a Response in Opposition, (Doc. 56), on June 26, 2017. Upon due consideration of the arguments and legal authorities submitted by the parties, the Defendant's Motion to Dismiss Count Two of the Indictment is denied.

**I.  BACKGROUND**

On January 12, 2017, a grand jury sitting in Orlando, Florida, returned a two-count Indictment against Defendant, Noor Salman. Count I charges Defendant with aiding and abetting the attempted provision and provision of material support to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1) and (a)(2). Count II charges Defendant with obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). The Indictment alleges that Defendant aided and abetted her husband, Omar Mateen, in his attempt to provide material support or resources to the Islamic State of Iraq and the Levant (hereinafter referred to as "ISIL" or the "Islamic State"), culminating in the mass murder of forty-nine civilians and the injury of fifty-three civilians at the Pulse nightclub in Orlando, Florida, on June 12, 2016. (*Id.*).

Defendant moves to dismiss Count Two of the Indictment on the basis that venue for this offense is only proper in the Southern District of Florida. (Doc. 54, p. 22). Count Two alleges the following criminal conduct:

> On or about June 12, 2016, in the Middle District of Florida, and elsewhere, the defendant,
>
> NOOR ZAHI SALMAN,
>
> did knowingly engage in misleading conduct toward another person and persons, that is, Officers of the Fort Pierce, Florida, Police Department and Special Agents of the Federal Bureau of Investigation, with the intent to hinder, delay, and prevent the communication to federal law enforcement officers and judges of the United States of information relating to the commission and possible commission of a federal offense, that is, defendant NOOR ZAHI SALMAN did knowingly mislead Officers of the Fort Pierce, Florida, Police Department and Special Agents of the Federal Bureau of Investigation in order to prevent them from communicating to agents of the Federal Bureau of Investigation and the United States Department of Justice and judges of the United States of America, information relating to the attack on June 12, 2016, at the Pulse Night Club, in Orlando, Florida, in the Middle District of Florida.
>
> In violation of 18 U.S.C. § 1512(b)(3).

(Doc. 1, pp. 2–3).

Defendant proffers, and the Government does not contest, that Count Two is based on an interview conducted by the Federal Bureau of Investigation ("FBI") soon after Omar Mateen attacked the Pulse Night Club. (Doc. 54, p. 2). The interview took place in St. Lucie and Fort Pierce, Florida, which are located in the Southern District of Florida. (*Id.*).

## II.    ISSUES PRESENTED

Defendant's motion challenges whether venue for Court Two—obstruction of justice—is proper in the Middle District of Florida. To resolve this issue, the Court must

determine whether the charged crime was completed in the Southern District of Florida or is a continuous offense—that is, an offense which began in one district and completed in another, which may be prosecuted in any district in which such offense was begun, continued, or completed. 18 U.S.C. §§ 1512(i), 3237(a). Alternatively, the Court must decide if the offense conduct is included in the venue provision of the obstruction statute, which provides, in relevant part, that "[a] prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected."[1] 18 U.S.C. § 1512(i).

### III.   ANALYSIS

Article III of the Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The fundamental nature of this guarantee is found in its repetition in the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 additionally states that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

The statute that provides for the offense charged in Count Two of the Indictment includes a venue provision, and, in construing this statute, the Court must first look to the plain language of the statute. *See United States v. Williams*, 790 F.3d 1240, 1245 (11th

---

[1]   Defendant briefs the venue issue by first tackling whether § 1512(b)(3) involves an official proceeding and whether a negative ruling on that point is fatal to venue being proper under the first prong of § 1512(i). The Court will address the continuing offense or second prong of § 1512(i) and thereafter speak to the first prong, or official proceeding prong, of the venue provision.

Cir. 2015), *cert. denied*, 136 S. Ct. 918 (2016). Accepted principles of statutory construction require this Court to interpret the words of a statute by giving them their ordinary and plain meaning and by giving each provision full effect. *Id.* Accordingly, the plain language of a statute is deemed to conclusively express Congress's intent unless the resulting application would lead to absurd or internally inconsistent results. *United States v. Coleman*, 416 F. App'x 41, 44 (11th Cir. 2011) (per curiam).

Count Two of the Indictment charges a violation of 18 U.S.C. § 1512(b)(3), which states as follows:

> (b) Whoever knowingly . . . engages in misleading conduct toward another person, with intent to—
>
> . . .
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .
>
> shall be fined under this title or imprisoned not more than 20 years, or both.[2]

The venue provision—§ 1512(i)—provides as follows:

> A prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

The words "the district in which the conduct constituting the alleged offense occurred" includes multiple districts when the offense conduct begins in one district and is

---

[2] To obstruct justice under § 1512(b)(3), a defendant must knowingly and willfully (1) engage in misleading conduct toward another person, (2) with the intent to hinder, delay, or prevent the communication of information to a federal official, (3) about the commission or possible commission of a federal crime. *United States v. Ronda*, 455 F.3d 1273, 1285 (11th Cir. 2006).

completed in another district, or when the offense is committed in more than one district. *See* 18 U.S.C. § 3237. This is sometimes referred to as the "continuing-offense doctrine." *See, e.g.*, *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir. 1973). The Government need only prove venue by a preponderance of the evidence. *United States v. Stickle*, 454 F.3d 1265, 1273 (11th Cir. 2006).

### A.   Continuing Crime

The site or *locus delicti* of a charged offense "'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). The issue before this Court is complicated by the fact that Defendant has elected not to provide the Court with the statements attributed to her that form the basis of the obstruction of justice charge.[3] The Court is therefore constrained to consider only the allegations contained in the Indictment, which provides, in pertinent part, that:

> [D]efendant NOOR ZAHI SALMAN did knowingly mislead Officers of the Fort Pierce, Florida, Police Department and Special Agents of the Federal Bureau of Investigation in order to prevent them from communicating to agents of the Federal Bureau of Investigation and the United States Department of Justice and judges of the United States of America, information relating to the attack on June 12, 2016, at the Pulse Night Club, in Orlando, Florida, in the Middle District of Florida.

(Doc. 1, pp. 2–3).

The record before the Court consists of the Indictment, quoted by Defendant, which avers that the misleading communications were made to state and federal law

---

[3]   The nature of the statements attributed to Defendant are critical to the success of her motion to dismiss, and yet, for reasons known only to Defendant, the motion is devoid of even a bare-bones description of those statements.

enforcement officers to prevent them from communicating information relating to the alleged terrorist attack at the Pulse Night Club—clearly a federal offense—to FBI agents and federal judges in the Middle District of Florida.

Defendant argues that "a violation of § 1512(b)(3) is complete the moment the defendant allegedly misleads another person." (Doc. 54, p. 15). That is, Defendant contends that § 1512(b)(3) is a "point-in-time" offense as opposed to a continuing offense. (*Id.* at p. 13). Defendant supports this proposition by citing *United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004). In *Salinas*, the First Circuit addressed the issue of venue in the context of passport fraud in violation of 18 U.S.C. § 1542. *Id.* at 163. In relevant part, § 1542 forbids a person from "willfully and knowingly mak[ing] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States." *Id.* at 165 (quoting 18 U.S.C. § 1542). The First Circuit interpreted the passport fraud offense to consist of two elements: "(i) the making of a false statement, (ii) with the intent to secure the issuance of a passport." *Id.* Accordingly, the *Salinas* Court held that "passport fraud is complete at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport." *Id.* Significantly, the First Circuit noted that the passport statute does not require the false statement to be communicated to the authority charged with issuing the passport:

> There is nothing in the statute of conviction that suggests that completion of the crime is in any way contingent upon the receipt of an allegedly false application at a processing center as opposed to receipt by the State Department's authorized agent at a post office intake station.
>
> . . . .
>
> [T]he statute is devoid of any flat requirement that the statement be conveyed or communicated to an ultimate decisionmaker.

6

*Id.* at 166.

Contrary to the passport fraud statute where the crime is complete upon the submission of the false statement,[4] the obstruction of justice statue under which the Indictment travels requires the Government to prove three elements: (1) Defendant knowingly and willfully engaged in misleading conduct toward another person; (2) Defendant intended to hinder, delay, or prevent the communication of information to a federal official; and (3) the information related to the commission or possible commission of a federal crime. *United States v. Ronda*, 455 F.3d 1273, 1284 (11th Cir. 2006). The second element requires the Government to prove that Defendant's misleading conduct was undertaken with the intent to hinder, delay, or prevent "the communication of information" to a federal official. Therefore, unlike the passport fraud statute which is complete upon the utterance (or writing) of a false statement, the obstruction of justice statute requires the Government to prove that Defendant's misleading conduct was intended to adversely impact the "communication of information" to a federal official which information is about the "commission or possible commission of a federal crime." Clearly, the federal crime which is the object of the communication may have been committed in a district other than where the misleading conduct is committed. Hence, the federal officials who would benefit from the communication of such information may be located in a district other than where Defendant is physically located when she engages in the misleading conduct. Simply put, § 1512(b)(3) by its plain language envisions the

---

[4] This is not to suggest this Court agrees with the reasoning of the First Circuit. To the contrary, this Court views the analysis conducted by the First Circuit as too restrictive. *See, e.g.*, *United States v. Angotti,* 105 F.3d 539 (9th Cir. 1997) (Venue for false statement to bank official proper where statement is made and where loan is approved.).

7

misleading conduct having the continuing effect of adversely impacting a federal investigation or prosecution in a district other than where the misleading conduct occurs.

Defendant's reliance on the First Circuit's decision in *Salinas* is unavailing. The *Salinas* Court rejected the argument that delivery of a fraudulent passport application to the post office did not complete the offense because the post office was only an intermediary and not the intended recipient. The First Circuit reasoned that "reaching a particular audience is not a component" of passport fraud, re-iterating that passport fraud is complete upon the submission of a false statement in support of a passport application. *See id.* at 168. Indeed, the *Salinas* Court distinguished the facts before it with the Ninth Circuit's decision in *United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997), where the defendant was charged with making false statements on a loan application to a federally insured financial institution. *See Salinas*, 373 F.3d at 167–68. The *Angotti* Court found that the defendant could be tried in the district where the loan application was ultimately approved by the bank, despite the fact that the defendant made and submitted his false statements in a different district. *See id.* at 167. The *Salinas* Court observed that the defendant in *Angotti* committed an offense which continued to the district where the bank approved the loan because the defendant "knew his application had to be forwarded *somewhere* for approval." *Id.* at 168.

Unlike the offense at issue in *Salinas*, the obstruction of justice statute at issue here envisions that the law enforcement officers who interviewed Defendant in the Southern District of Florida may be acting as intermediaries. That is, § 1512(b)(3) criminalizes engaging in misleading conduct "toward another person"—here the state and federal law enforcement officers in the Southern District of Florida—to adversely affect

"the communication of information to a federal official," rendering the law enforcement officers in the Southern District intermediaries who communicated Defendant's allegedly misleading statements to where the intended recipients of the information were located. Indeed, it is alleged that Defendant knew her misleading conduct—which occurred in the Southern District of Florida—concerned the Pulse nightclub shooting—which occurred in the Middle District of Florida. Consequently, based on the allegations contained in the Indictment, Defendant knew her misleading conduct concerning the Pulse shooting would be forwarded to law enforcement officials in the Middle District of Florida, thus continuing the crime with which she is charged.

Defendant also relies on *Fowler v. United States*, 563 U.S. 668 (2011), for the proposition that once the defendant engages in misleading conduct by deceiving law enforcement officers, the crime is complete, rendering the offense a "point-in-time" offense. (Doc. 54, p. 16). Defendant misapprehends the holding in *Fowler* in reaching this conclusion. The Supreme Court was faced with determining whether the evidence supported a conviction under § 1512(a)(1)(C) where the defendant murdered a person with the intent to "prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind."[5] *Fowler*, 563 U.S. at 670. The Supreme Court noted that if a defendant kills a victim to prevent him from communicating with a federal law enforcement officer, "the statute fits like a glove." *Id.* at 672. However, the Supreme

---

[5] Title 18 U.S.C. § 1512(a)(1)(C) makes it a crime to "kill or attempt to kill . . . another person" with the "intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense."

9

Court found the witness tampering statute also "covers a defendant who kills with intent to prevent communication with law enforcement officers generally (*i.e.*, with any and all law enforcement officers)." *Id.* at 673. The issue before the Supreme Court in *Fowler* was "what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal law enforcement officer in circumstances where the defendant did not think specifically about any particular communication or its recipient." *Id.* at 673.

Faced with this issue, the Supreme Court reasoned that "[t]he Government will already have shown beyond a reasonable doubt that the defendant possessed the relevant broad indefinite intent, namely, the intent to prevent the victim from communicating with (unspecified) law enforcement officers." *Id.* at 674. Defendant selects this sentence from the *Fowler* opinion to reach the conclusion that the crime is complete upon the utterance of the misleading statements. A careful reading of the opinion instructs that Defendant's analysis of the Supreme Court's holding is too cursory. The Supreme Court reasoned that "the Government must show more than the broad indefinite intent we have described, the intent to prevent communications to law enforcement officers in general." *Id.* The Supreme Court therefore concluded that, "where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer." *Id.* at 677–78. In addition, the Government must show "that the likelihood of communication to a federal officer was more than remote, outlandish, or simply

10

hypothetical." *Id.* at 678. Far from defining § 1512(a)(1)(C) as a point-in-time offense, the Supreme Court in *Fowler* required the Government to prove that the killing was intended to prevent "communications" with federal officers which, depending upon the facts, includes a crime commenced in one district (where the killing occurs) and completed in another (where the communications would have been received by the federal official).

Lastly, Defendant relies on an unpublished decision from the Eleventh Circuit Court of Appeals, *United States v. Ronga*, No. 15-15542, 2017 WL 1046077 (11th Cir. Mar. 20, 2017). The Court in *Ronga* was faced with deciding whether a conviction pursuant to § 1512(b)(3) may be supported where the defendant contends "no misleading information was actually transferred to federal officials because he ultimately abandoned his earlier false statements and told the truth." *Id.* at *3. In *Ronga*, the defendant, a Lee County Sheriff's Deputy, was tasked with transporting an unruly restaurant patron home. *Id.* at *1. Instead, the defendant drove the victim to a construction site where he assaulted the victim and stole his property. *Id.* When interviewed about the incident, the defendant lied to his superiors. *Id.* at *2. Thus, the obstruction offense had commenced and completed in a single district. Here the Court found the physical act, *actus reus*, was the defendant's misleading conduct, and the *mens rea*, consisting of his intent to hinder, delay, or prevent communication of information relating to a possible federal offense, were complete without the actual transfer of misleading information to a federal official. *Id.* at *4. The Court reasoned that "[e]ven if [the statute's] purpose is to prevent the transfer of misleading information to federal officials, it follows that the statute criminalizes attempts to provide misleading information or inhibit truthful information from being

11

transferred."[6] *Id.* Under the facts of *Ronga*, the attempt was completed in a single district, just as the offense of making a false statement in an application for a loan may be complete in a single district if the loan is applied for and approved in that single district. However, in the instant case, Defendant is charged with misleading law enforcement officers in the Southern District of Florida in order to prevent them from communicating to federal law enforcement officers and federal judges in the Middle District of Florida. Defendant knew the Pulse Night Club was located in Orlando, which one may conclude is indicative of intent to hinder the investigation of a criminal offense in this district. The facts of this case are therefore distinguishable from the facts presented in *Ronga*.[7]

The facts presently before the Court, albeit limited, support a finding that the offense began in the Southern District of Florida and was intended to adversely impact FBI agents and federal judges located in the Middle District of Florida. That is, the offense was continuing in nature, making venue proper in this district. *See United States v. Barnham*, 666 F.2d 521, 524 (11th Cir. 1982) ("It is the impact of the acts, not their location, that controls.") (quoting *United States v. Tedesco*, 635 F.2d 902, 906 (1st Cir. 1980)) (footnote omitted). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Snipes*, 611 F.3d 855, 866 (11th

---

[6] This is a reference to *United States v. Veal*, 153 F.3d 1233, 1252 (11th Cir. 1998), where the Court held "federal jurisdiction under § 1512(b)(3) is 'based on the federal interest of protecting the integrity of potential federal investigations by ensuring that transfers of information to federal law enforcement officers and judges relating to the possible commission of federal offenses be truthful and unimpeded."

[7] The Eleventh Circuit's unpublished decision in *Ronga* is not binding, and this Court declines to extend the fact-specific reasoning of *Ronga* to the facts of the instant case.

Cir. 2010) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)) (footnote omitted).

### B.     Official Proceeding

As discussed previously, 18 U.S.C. § 1512(i) provides venue in obstruction of justice cases, and the first prong of that statute establishes that "[a] prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected." Defendant submits that the first prong of § 1512(i) does not support venue in the Middle District of Florida, because § 1512(b)(3) does not require an "official proceeding" as an element of the offense. (Doc. 54, p. 4). The Court agrees that obstruction of justice under § 1512(b)(3) does not require conduct which obstructs an official proceeding. *Ronda*, 455 F.3d at 1288 ("Unlike § 1512(b)(2), § 1512(b)(3) makes no mention of 'an official proceeding' and does not require that a defendant's misleading conduct relate in any way either to an 'official proceeding' or even to a particular ongoing investigation."). The question, then, is whether the venue provision of § 1512(i) applies to offenses which lack an "official proceeding" as a substantive element of proof. This issue must be resolved before the Court wades into what constitutes an official proceeding.

Defendant argues that because § 1512(i) states "[a] prosecution under this section . . . may be brought in the district in which **the** official proceeding . . . was intended to be affected . . . ," the charged offense must include an official proceeding. (Doc. 54, p. 6) (emphasis added). She urges the Court to adopt the position that venue is an element of an offense and "there cannot be an 'official proceeding' element in § 1512(b)(3), and § 1512(i) cannot be read to create one." (*Id.*). Defendant therefore

13

concludes that venue is proper only in the district in which the conduct constituting the crime occurred. (*Id.*). Conspicuously absent from Defendant's brief, however, is any controlling appellate authority holding that venue under § 1512(i) only applies to offenses which have an official proceeding as an element.

Unlike the elements defining the charged criminal offense, venue is a "non-essential element of a crime." *United States v. Stickle*, 454 F.3d 1265, 1271 (11th Cir. 2006). Hence, "[i]t has long been settled that when the government is proving a non-essential element of a crime, like venue, the prosecution is not required to meet the reasonable doubt standard. *Id.* In *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004), the Eleventh Circuit discussed the standard applied when reviewing a challenge to venue:

> The standard this court applies when venue is challenged is "whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict . . . the Government proved by a preponderance of the evidence" that the crimes occurred in the district in which the defendant was prosecuted.

*Id.* at 1253 (quoting *United States v. Males*, 715 F.2d 568, 569 (11th Cir. 1983)). Accordingly, Defendant is correct when she asserts venue is an element of the crime, but her analysis fails to take into consideration that venue is a non-essential element of the crime. While it is tempting to apply Defendant's construction of § 1512(i) as limiting application of the first prong of the venue provision *only* to obstruction offenses which have as a substantive element of the crime an adverse impact on an official proceeding, to do so would transform a non-essential element into something more.

To be sure, one may conjure scenarios wherein a defendant engages in misleading conduct cognizable under § 1512(b)(3) which does not involve an official

proceeding. In such cases, venue is proper only in the district in which the conduct constituting the alleged offense occurred. Yet one need look no further than the statutory definition of the term "official proceeding" to conclude that Count Two properly alleges venue:

> The term "official proceeding" means—
>
> a proceeding before a judge or court of the United States, a United States magistrate judge . . . , or a Federal grand jury[.]

18 U.S.C. § 1515(a)(1)(A).

Count Two of the Indictment charges that Defendant engaged in misleading conduct to prevent Special Agents of the FBI from communicating to FBI agents and federal judges in this District information regarding the Pulse Night Club attack. (Doc. 1). A proceeding before a federal judge (whether or not pending or about to be instituted) qualifies as an official proceeding. Therefore, the Indictment alleges sufficient facts to support venue in this District. The Government argues that at least two other official proceedings support venue: (1) "the almost immediately ensuing grand jury investigation"; and (2) "the law enforcement investigation into the Pulse Night Club shooting." (Doc. 56, pp. 1–2). Assuming the Government establishes at trial that proceedings before a federal judge or a grand jury proceeding was intended to be affected, venue is met under the first prong of § 1512(i). As Defendant correctly observes, there is a split in the circuits as to whether a federal investigation meets the definition of an "official proceeding." This Court need not weigh in on that debate at this early juncture in order to resolve the instant motion.

**IV.   CONCLUSION**

The factual allegations set forth in Count Two of the Indictment are sufficient to demonstrate, at this stage of the proceedings, that venue is proper in the Middle District of Florida. It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Count Two for Lack of Venue (Doc. 54) is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on July 18, 2017.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record