# EXHIBIT 5

Behavioral Sciences & the Law
Behav. Sci. Law (2012)
Published online in Wiley Online Library
(wileyonlinelibrary.com) DOI: 10.1002/bsl.2032

# A United States Forensic Sample for the Gudjonsson Suggestibility Scales

I. Bruce Frumkin, Ph.D., ABPP*, Stephen J. Lally, Ph.D., ABPP† and James E. Sexton, Ph.D., Ph.D.†

**The Gudjonsson Suggestibility Scales (GSS) is a valuable test to use as part of a comprehensive assessment of psychological and interrogative factors relevant to a defendant's vulnerability to giving a false or involuntary confession. One limitation of the test is that the manual only provides information for samples from Iceland and Great Britain. This report describes the results of 334 individuals in the United States, who were administered the tests as part of an evaluation to assess confession-related issues in a forensic context (i.e., capacity to waive *Miranda* rights or vulnerability in providing a false or involuntary confession). This forensic sample includes both juveniles and adults. Results are consistent with Gudjonsson's British and Icelandic samples, in which the Yield 1 score is more affected by intellectual and cognitive variables, but Shift and, to a lesser extent, Yield 2 scores are more related to emotional and personality characteristics. Copyright © 2012 John Wiley & Sons, Ltd.**

## INTRODUCTION

Mental health professionals are often used by the court in cases in which the admissibility or validity of a confession has been disputed. Leo (1996) has shown that 80% of suspects waive their rights, and those who provide self-incriminating statements (26%) are more likely to be found guilty and convicted. Wrightsman and Kassin (1993) have found that confessions are produced in 50% of criminal cases. Some researchers have examined characteristics of false confessions. For example, Drizen and Leo (2004) provided and analyzed basic demographic, legal, and case-specific descriptive data from 125 false confessors, and Tepfer, Nirider, and Tricarico (2010) analyzed the characteristics of 103 children and adolescents who falsely confessed to a crime. The American Psychology–Law Society/Division 41 of the American Psychological Association has recently published a "white paper" articulating the risk factors associated with police-induced confessions (Kassin et al., 2010).

It is impossible to ascertain the exact percentage or numbers of suspects who falsely confess. This is because police usually keep no tally of the number of suspects interrogated annually, and, of those departments who do, no data are kept concerning percentages that result in a true confession, no confession, or a false confession. A suspect, despite law enforcement claims to the contrary, may even deny having confessed in the first place. A true confession may also later be retracted by the

---

*Correspondence to: I. Bruce Frumkin, Forensic and Clinical Psychology Associates, P.A., 7241 SW 63rd Avenue, #203-A, South Miami, FL 33143, U.S.A. E-mail: BFrumkin@aol.com
†American School of Professional Psychology at Argosy University, Washington, DC.

Copyright © 2012 John Wiley & Sons, Ltd.

I. Bruce Frumkin *et al.*

defendant. According to Frumkin (2008), a confession is often not true or false in a dichotomous fashion. There are varying degrees of truth regarding particular aspects of a confession. Even an essentially true confession can be challenged in court if an aspect of that confession erroneously places the defendant in a more incriminating light than what actually transpired.

Arguably, the best research examining false confession rates among those convicted of serious crime comes from data collected from the Innocence Project. From 1989 to 2010, of the 273 post-conviction DNA exonerations, approximately 25% of the defendants had falsely confessed or provided incriminating information (Innocence Project, 2012). Kassin et al. (2007), in a survey of 631 individuals in law enforcement, found that the police estimated that, in their own experience, 4.8% of innocent suspects make false confessions during interrogations. Redlich (2007) found that the self-reported false confession rate for those with serious mental disorders was 22%. This confession rate was similar to the 19% lifetime prevalence of false confessions in Iceland reported by Sigurdsson, Gudjonsson, Einarsson, and Gudjonsson (2006). Laboratory paradigms by Kassin and Kiechel (1996) and their progeny examined various factors related to college student participants falsely confessing after being accused of causing a computer to crash by accidently hitting the Alt key. Although providing valuable data regarding the processes and individual characteristics that lead innocent people to confess, the ecological validity of these studies makes it difficult to generalize to real world police interrogations where the stakes for a false confession are higher.

Courts have looked to mental health professionals to assist in cases in which the admissibility of a confession is disputed. Often they are used to evaluate psychological factors that might be relevant in cases of alleged false or coerced/involuntary confessions. In *Crane v. Kentucky* (1986), the U.S. Supreme Court held that a confession's reliability may be challenged at trial, even if the confession had been deemed voluntary. A suspect's psychological vulnerability to the interrogation can be introduced to the trier of fact to assist him or her in deciding how much weight to give to the confession. Testimony can be offered at both pretrial hearings and trial. Mental health professionals have specialized knowledge that can assist the trier of fact in helping to judge the validity and reliability of a confession. Expert testimony can also assist a jury in understanding why a particular defendant may have been at greater psychological risk to giving in to police influence compared to the average person. This testimony can apply both to the voluntariness of a *Miranda* waiver (*Miranda v. Arizona*, 1966) and confession as well as the validity and reliability of the incriminating statements.

A number of authors (DeClue, 2005; Frumkin, 2000, 2008, 2010; Frumkin & Garcia, 2003; Gudjonsson, 1997, 2003; Oberlander, Goldstein, & Goldstein, 2003) have written guidelines on how to conduct evaluations relevant to false or coerced confessions. In addition to interviewing the defendant, the consensus is that the psychologist administers cognitive and personality tests as well as measures, if warranted, to examine effort or malingering. Third party records need to be reviewed in addition to sometimes interviewing collateral sources. Reviewing recordings or transcripts of the interrogation itself is a crucial component in the forensic assessment (Frumkin, 2008).

The Gudjonsson Suggestibility Scales (GSS; Gudjonsson, 1997) is a valuable test to use as part of a comprehensive assessment of psychological and interrogative factors relevant to a defendant's vulnerability to giving a false or involuntary confession. It cannot determine the validity or voluntariness of a confession but rather provides data

U.S. forensic sample for the GSS

to the trier of fact to assist in that determination. The GSS, developed by Gudjonsson (1997), is a test specifically designed to help measure the construct of interrogative suggestibility. Gudjonsson (1986, 2003) and Gudjonsson and Clark (1986) define interrogative suggestibility as the extent to which, within a closed interaction, an individual comes to accept messages or information communicated during formal questioning as true, and as of a result of which subsequent behavior is affected.

The GSS is presented to the defendant as a test of memory, though its actual purpose is not a measure of short-term memory. It involves reading a complex narrative story consisting of 40 bits of factual information. After reading the story to the defendant, he or she is told to state all that is remembered about the story. For defendants with good recall, there is a 50-minute delay before being asked to recall again what they remember about the story (those with poor initial recall are not given the 50-minute delay recall). Next all subjects are asked 20 standardized questions about the story; 15 of the questions are designed to be leading or misleading. A Yield 1 score is obtained on the basis of the number of times the subject *yields* to the leading questions. Regardless of the subject's performance, he or she is told firmly that a number of errors were made in answering the questions and that the questions are to be repeated with the subject needing to be more accurate in the answers. Yield is measured a second time, which produces a Yield 2 score. In addition, a Shift score is obtained, which consists of how many times the subjects *shifts* from one response, right or wrong, to a different response. A Total Suggestibility score (GSS Total) is calculated, the sum of Yield 1 and Shift. There are two versions of the GSS that vary based on the content of the story and the resultant questions asked.

Some argue (e.g., Beail, 2002; White & Willner, 2005) that the GSS should not be used for those with learning disabilities or low intelligence because the GSS is more likely to elicit acquiescent responses from those whose semantic memory is poor yet autobiographical memory is unaffected. However, Frumkin (2008, 2010) provided a detailed discussion of the methodological flaws in that research. Also, although it would seem that the GSS is only relevant for the *coerced–internalized false confession* (the type of confession whereby a suspect, with faulty memory for the time period surrounding the offense, confesses because he or she believes the police version of the alleged criminal conduct), its relevancy is also demonstrated for the *coerced–compliant false confession* (the suspect does not have private acceptance of what the police say; Gudjonsson, 2003). Research (Gudjonsson, 1989, 1990) has shown a modest correlation between compliance and suggestibility, particularly in regard to the Shift score. The various types of false confessions have been articulated in greater depth by a number of authors (Frumkin, 2010; Kassin & Wrightsman, 1985; McCann, 1998; Ofshe & Leo, 1997, 1997).

Recently, Frumkin (2008, 2010) and Fulero (2010) have provided detailed analyses of the admissibility issues of the psychology of interrogations and confessions in light of *Frye v. United States* (1923) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) criteria, with Frumkin's chapter more specifically focused on the GSS. A concern (Rogers, Harrison, Rogstad, LaFortune, & Hazelwood, 2010) with the use of the GSS in the United States has been the test manual (Gudjonsson, 1997) only providing normative data from Great Britain and Iceland. This concern seems unwarranted because research (Gudjonsson, Rutter, & Clare, 1995) has shown that ethnicity contributes to relatively minor variance in GSS scores compared with other factors (e.g., intelligence, memory, anxiety). Icelandic norms and norms from Great Britain are remarkably similar (Gudjonsson, 1997). Intuitively, there is little reason

I. Bruce Frumkin *et al.*

to believe that the United States population would perform much differently than the population in multicultural Great Britain. Finally, the GSS provides good behavioral data on ways in which a defendant responds when confronted with leading questions, both with and without pressure, and how easily the individual shifts to different responses under pressure.

Pollard et al. (2004) presented preliminary data on 72 normal participants from the Seattle, Washington, area, who were administered the GSS 2. These participants were not administered the Delayed Recall portion of the test and had a higher level of intelligence and education than the British sample. Results showed that, although the Total Suggestibility scores were almost identical between the two groups, the Seattle area sample had a lower Yield 1 score than the British sample and a significantly higher Shift score than the British sample. Of note, Trowbridge (coauthor of Pollard et al., 2004; personal communication, November 3, 2005) stated that in his forensic practice, despite his data, he still uses the norms from Great Britain.

Rogers et al. (2010) argued that the British sample of the GSS 1 is inapplicable to U.S. jurisdictions. As part of research on *Miranda* comprehension, they examined the effects of suggestibility among three diverse samples of defendants awaiting trial, including those from a competency restoration facility. They found that GSS scores were relatively similar across settings. Yet the average Total GSS scores were approximately one-half of a standard deviation higher in the U.S. samples than in the British court referral samples. Although Rogers et al. see this difference between the samples as problematic and indicative of inapplicability of the British samples to a United States population, we do not view the differences as all that great. Frumkin (2010) has discussed interpreting GSS scores conservatively anyway. When one considers the demographic differences between the samples of Rogers et al., how intelligence was calculated (using an abbreviated scale of intelligence), and the effect sizes that existed between groups in the Rogers et al. sample (the average GSS scores differed by approximately one-third of a standard deviation between the highest scoring and lowest scoring groups), such a difference, although statistically significant, does not appear to be clinically significant. It is also notable that Rogers et al. did not provide data on the Yield 1, Yield 2, and Shift scores of their participants.

In order to make the GSS a more useful assessment tool for use in the United States and to replicate findings of interrogative suggestibility correlates with demographic and psychological variables, an extensive study was conducted whereby GSS 1 scores, collected as part of confession-related evaluations, were analyzed. These GSS 1 scores will hereto be referred to as the U.S. Forensic sample. It should be noted that the Gudjonsson (1997) "U.K. Court Referral" sample included individuals who were evaluated for a variety of psycholegal assessments, including competency to stand trial and insanity, and also even included evaluations of victims of crimes.

## METHOD

### Description of the Sample

This sample consists of 334 individuals referred specifically to assess confession-related issues (i.e., capacity to waive *Miranda* rights or vulnerability in providing a false or involuntary confession; in less than 5% percent of the sample evaluations were

performed for post-conviction appeal purposes). The majority of the individuals were African American (53.0%), but there were also sizable numbers of Non-Hispanic White individuals (29.0%) and Hispanic individuals (16.2%; 1.2% of the sample did not have ethnicity information and 0.6% consisted of other ethnic groups). Consistent with how others (e.g., Grisso, 1998) in the field have defined juveniles, in this sample juveniles were defined as those age 16 and younger. There were 102 juveniles (those age 16 or younger) and 231 adults (defined in this study as age 17 or older), and one individual with no information for his age in the sample. The mean age of the juveniles in this forensic sample was 13.9 (SD 1.8, 95% CI 13.5–14.3) and the mean age of the adults was 28.5 (SD 11.9, 95% CI 26.9–30.1). Education level, in terms of grades completed, was available for 97.0% of the sample. The mean education grade level of the juveniles was 7.8 (SD 1.6, 95% CI 7.2–8.2) and for the adults 9.9 (SD 2.2, 95% CI 9.6–10.2). Of the adults in the sample, 26.1% had a high school education or above while 6.8% had some college education or above. Almost all of the individuals were male (only 17 females, or 3.9%).

Overall intelligence, in terms of Full Scale IQ (FSIQ) from a nonabbreviated Wechsler instrument (e.g., WAIS-R, WAIS-III, WISC-R, or WISC-III), was available for 87.7% ($n=293$) of the sample. Verbal IQ (VIQ) was available for 88.3% ($n=295$) and Verbal Comprehension Index (VCI) was available for 88.9% of the sample ($n=297$). The VCI score was preferred, as VIQ scores are no longer calculated with Wechsler tests. In order to maximize the number of individuals for whom there was a measure of verbal ability, for the 17 cases (5.1% of the sample) where a VCI score had not been collected, we used their VIQ score instead, so that a measure of verbal intelligence was available for a total of 314 cases. This variable will be referred to as $VCI_i$. For all analyses run with this modified measure of verbal ability, we also explored the pattern of results using only the VCI, and these results have been provided. Psychometrically, the correlation between the VCI and VIQ in this sample at .97 suggests strongly that the two measures are assessing the same construct, and both have the benefit of being normed scores. For working memory (WMI), 85.6% ($n=268$) of the sample had data.

Across the entire sample of those in which IQ scores were measured, 22.5% had an FSIQ of 69 or less, and 23.2% had an FSIQ of 90 or higher. Only 9.6% had an FSIQ above 100. The mean FSIQ of the juveniles was 77.9 (SD 12.3, 95% CI 75.3–80.5), mean VIQ was 77.9 (SD 12.7, 95% CI 75.1–80.8), mean VCI was 78.3 (SD 13.2, 95% CI 75.5–81.0), and mean $VCI_i$ (where VIQ was used if the VCI score was missing) was 78.6 (SD 13.1, 95% CI 75.9–81.2). For the adults, the mean FSIQ was 81.0 (SD 14.9, 95% CI 78.9–83.1), VIQ was 79.4 (SD 14.2, 95% CI 79.4–83.3), VCI was 83.1 (SD 14.4, 95% CI 81.0–85.1), and mean $VCI_i$ was 82.9 (SD 14.7, 95% CI 80.9–84.9). For WMI, the mean for juveniles was 82.7 (SD 12.6, 95% CI 79.6–85.8), and the mean for adults was 80.5 (SD 14.5, 95% CI 78.6–82.4).

In addition to Wechsler measures of intelligence, many of the individuals had completed measures of personality and psychopathology. Specifically, 266 juveniles and adults completed either the Minnesota Multiphasic Personality Inventory-Adolescent (MMPI-A; Butcher et al., 1992) or the Minnesota Multiphasic Personality Inventory-2 (MMPI-2; Butcher et al., 2001), but only 182 of those individuals provided valid MMPIs (78.8%). Because only 293 of the total 334 also had IQ scores, only 147 had data for all relevant variables: FSIQ, MMPI scales 0 and 8, Yield, Shift, and GSS total. There was no significant difference between those with or without FSIQ data on personality or

I. Bruce Frumkin *et al.*

suggestibility, suggesting there was no bias in omission. For the other set of personality scales, 112 out of the 231 adults (48.5%) completed the 16PF (Cattell, Cattel, & Cattell, 1993) and all protocols were considered valid for interpretation. Of these 112, 104 also had IQ scores available as a covariate. The majority (94.3%) of the sample were additionally administered the Grisso (1998) tests designed to help assess current understanding and appreciation of *Miranda* rights.

### Procedure

The data were collected as part of forensic evaluations conducted by the first author. The evaluations were completed between 1990 and 2007 in various jurisdictions throughout the country, although approximately 80% of the evaluations were conducted in the state of Florida. In all of the cases, the first author was retained by a defendant's defense counsel (e.g., public defender office, private defense attorney, conflict attorney, or court-appointed private attorney). The GSS 1 was administered to each defendant. The Yield 2 score had not been calculated for 56.9% of the sample. In the earliest administration of the GSS in forensic cases, Yield 2 had not been calculated as it was not a component of the total score, and there was less research on the Yield 2 at that time.

The GSS 1 was administered as part of a comprehensive clinical assessment, which generally included a clinical interview, intelligence and achievement testing, personality and suggestibility testing, testing to assess response distortion or malingering, and, when part of the referral question, the *Instruments for Assessing Understanding and Appreciation of Miranda Rights* (Grisso, 1998). In approximately 95% of the cases, the GSS 1 was administered following an extensive clinical interview. There was a slight change in the standardized administration of the test. In order to make the test more applicable to U.S. defendants, two words were substituted in the story read to the defendant. The word "vacation" was substituted for the word "holiday," and "dollars" was substituted for the word "pounds." Apart from these changes, the test was administered per instruction in the manual. Because the testing procedure was designed by Gudjonsson to make accurate recall of the 40 facts difficult for participants, changing these two words was not thought to influence GSS scores based on conversation with the test's author (G. Gudjonsson, personal communication, October 30, 2011). Scoring of the GSS is nondiscretionary and scoring of this sample was conducted according to instructions in the manual.

### RESULTS

The mean scores and standard deviations for both the juvenile and adult samples for the Yield 1, Yield 2, Shift, and Total GSS 1 scores are provided in Table 1. These are listed alongside the results from normative data for court referrals of Gudjonsson and Sigurdsson (1995), which consisted of 234 individuals from Britain referred for judicial purposes, typically involving pretrial assessments, and normative data from 100 alleged false confessors from the United Kingdom (Gudjonsson, 1990b). In addition, normative data for juvenile offenders of Sigurdsson and Gudjonsson (1996), which consisted of 108 Icelandic juvenile offenders who had pleaded guilty to criminal offenses, almost exclusively property offenses, and had been given a conditional discharge, are listed. It should be noted that labeling this group as a "juvenile" sample is somewhat

Table 1. Means and standard deviations of U.S. Forensic Adults and Juveniles and comparison groups from Gudjonsson and colleagues

|  | U.S. Forensic Adults | UK Court Referrals* | UK False Confession Adults[†] | U.S. Forensic Juveniles | Icelandic Juvenile Offenders[‡] | UK Juvenile Offenders[§] |
|---|---|---|---|---|---|---|
| Yield 1 | 6.4 (3.2) | 5.9 (3.7) | 6.7 (3.7) | 6.6 (2.8) | 3.3 (2.2) | 5.5 (2.7) |
| Yield 2 | 8.3 (3.6) | 7.3 (4.2) | No data | 9.7 (3.5) | 5.1 (2.9) | 8.2 (2.7) |
| Shift | 5.8 (3.9) | 4.3 (3.2) | 4.7 (2.3) | 7.3 (4.2) | 3.6 (2.8) | 6.1 (3.4) |
| Total GSS | 12.2 (5.5) | 10.2 (5.7) | 11.4 (5.3) | 14.0 (5.6) | 6.9 (3.9) | 11.7 (4.7) |

*Gudjonsson & Sigurdsson, 1995; note average age 30, SD = 11.8, range 13–72.
[†]Gudjonsson, 1990b.
[‡]Sigurdsson & Gudjonsson, 1996; note average age 18, range 15–23.
[§]Richardson et al., 1995.

misleading. Ages ranged from 15 to 23, with a mean age of 18. Because of this, another comparison, labeled by Gudjonsson (1997) as "Adolescent Boys – Study 3" from Richardson, Gudjonsson, and Kelly (1995), which comprised 65 adolescent offenders residing in a secure unit, with ages ranging from 10 to 17, is listed. The percentile ranks for the U.S. Forensic sample for both adult and juvenile samples are provided in Table 2.

## Psychometric Characteristics of the GSS 1

Table 3 shows Pearson correlations between Yield 1, Yield 2, Shift, and Total scores across age groups. As can be seen, Shift is more highly correlated with Yield 2 (.49) than with Yield 1 (.21; Fisher $Z = 3.21$, $p < .001$). This correlation is not surprising in that both Shift and Yield 2 are derived after providing the defendant with firm instructions that errors were made in recalling the story. Yield 1 and Yield 2 are correlated at .51 (significant at the .01 level, two tailed).

## Relationship of Age, IQ, and Ethnicity to GSS 1 Variables

A factorial MANOVA analysis of race/ethnicity crossed by age (adult versus juvenile) was only significant for age, Pillai's trace $F(2, 320) = 4.942$, $p < .008$, but not for race/ethnicity, Pillai's trace $F(4, 642) = .438$, $p > .05$ or the interaction of age and race/ethnicity, Pillai's trace $F(4, 642) = .981$, $p > .05$. In other words, when age was controlled, there were no significant differences on the GSS scores associated with race/ethnicity. There was also no relationship with ethnicity when pre-existing differences in IQ were statistically controlled. Subsequent univariate tests suggested that the effect for age was primarily due to Shift, $F(1, 321) = 9.904$, $p < .002$, $\eta_p^2 = .030$, and GSS Total, $F(1, 321) = 7.350$, $p < .007$, $\eta_p^2 = .022$. Yield 1 was not significant, $F(1, 321) = .556$, $p = .456$, $\eta_p^2 = .002$). Yield 2, which was not collected for all cases, demonstrated a trend towards significance only for age, $F(1, 137) = 2.718$, $p = .102$, $\eta_p^2 = .019$, which is a low effect that arguably was only a trend due to the smaller sample size for this variable (see Table 4 for a listing of GSS scores by age).

As mentioned above, in order to maximize the number of individuals for whom there was a measure of verbal ability, we used the Verbal IQ (VIQ) for the 17 (5.1%) cases where a Verbal Comprehension Index (VCI) had not been collected. This combined variable is referred to as VCIi. Full Scale IQ, VCIi and WMI were

I. Bruce Frumkin et al.

Table 2. Percentile scores on the GSS for U.S. Forensic Juveniles (n = 102) and Adults (n = 231)

| Raw score | Juvenile | | | | Adult | | | | Raw Score |
|---|---|---|---|---|---|---|---|---|---|
| | Yield 1 | Yield 2 | Shift | Total | Yield 1 | Yield 2 | Shift | Total | |
| 0 | 0 | 0 | 5 | 0 | 2 | 3 | 5 | 1 | 0 |
| 1 | 1 | 0 | 10 | 0 | 4 | 4 | 14 | 2 | 1 |
| 2 | 6 | 4 | 15 | 2 | 12 | 8 | 25 | 3 | 2 |
| 3 | 14 | 11 | 21 | 4 | 20 | 9 | 32 | 5 | 3 |
| 4 | 25 | 11 | 26 | 4 | 29 | 16 | 41 | 8 | 4 |
| 5 | 39 | 15 | 34 | 6 | 41 | 25 | 50 | 11 | 5 |
| 6 | 51 | 15 | 40 | 9 | 52 | 33 | 62 | 14 | 6 |
| 7 | 60 | 19 | 53 | 13 | 66 | 38 | 70 | 17 | 7 |
| 8 | 72 | 33 | 61 | 19 | 75 | 47 | 75 | 25 | 8 |
| 9 | 82 | 41 | 69 | 25 | 84 | 56 | 81 | 32 | 9 |
| 10 | 93 | 52 | 76 | 28 | 88 | 68 | 87 | 42 | 10 |
| 11 | 97 | 67 | 85 | 32 | 95 | 79 | 92 | 46 | 11 |
| 12 | 99 | 74 | 92 | 37 | 97 | 87 | 94 | 51 | 12 |
| 13 | 99 | 89 | 93 | 44 | 98 | 97 | 96 | 61 | 13 |
| 14 | 99 | 96 | 94 | 53 | 99 | 98 | 98 | 69 | 14 |
| 15 | 100 | 100 | 96 | 59 | 100 | 100 | 98 | 74 | 15 |
| 16 | | | 98 | 67 | | | | 99 | 79 | 16 |
| 17 | | | 98 | 75 | | | | 99 | 83 | 17 |
| 18 | | | 99 | 79 | | | | 100 | 87 | 18 |
| 19 | | | 100 | 86 | | | | 100 | 90 | 19 |
| 20 | | | 100 | 91 | | | | 100 | 95 | 20 |
| 21 | | | | 93 | | | | | 97 | 21 |
| 22 | | | | 95 | | | | | 97 | 22 |
| 23 | | | | 95 | | | | | 98 | 23 |
| 24 | | | | 95 | | | | | 98 | 24 |
| 25 | | | | 97 | | | | | 99 | 25 |
| 26 | | | | 97 | | | | | 99 | 26 |
| 27 | | | | 99 | | | | | 99 | 27 |
| 28 | | | | 99 | | | | | 100 | 28 |
| 29 | | | | 99 | | | | | 100 | 29 |
| 30–35 | | | | 100 | | | | | 100 | 30–35 |
Table 3. Pearson correlations between GSS Yield 1, Yield 2, Shift, and Total scores for adults and juveniles

| | | GSSYIELD1 | GSSYIELD2 | GSS_SHIFT | GSS Total |
|---|---|---|---|---|---|
| GSSYIELD1 | Pearson correlation | 1.00 (n=334) | .51** (n=144) | .21** (n=334) | .70** (n=334) |
| GSSYIELD2 | Pearson correlation | | 1.00 (n=144) | .49** (n=144) | .62** (n=144) |
| GSS_SHIFT | Pearson correlation | | | 1.00 (n=334) | .85** (n=334) |
| GSS Total | Pearson correlation | | | | 1.00 (n=334) |

*Correlation is significant at the 0.05 level (two tailed).
**Correlation is significant at the 0.01 level (two tailed).

significantly negatively correlated with Yield 1, Shift, and Total GSS 1 scores, with the strongest correlations between the various cognitive scores and Yield 1. When FSIQ scores were broken into under 90 and 90 or over (i.e., the average range of intellectual functioning), cognitive functioning was no longer a significant source of variance in

Copyright © 2012 John Wiley & Sons, Ltd.                                Behav. Sci. Law (2012)
DOI: 10.1002/bsl

U.S. forensic sample for the GSS

Table 4. Age comparison of GSS variables

| Dependent variable | Age | Mean | Std error | 95% confidence interval | |
|---|---|---|---|---|---|
| | | | | Lower bound | Upper bound |
| GSSYIELD1 (N=334) | Adult | 6.4 | 0.2 | 6.0 | 6.8 |
| | Juvenile | 6.6 | 0.3 | 6.0 | 7.2 |
| GSSYIELD2 (N=144) | Adult | 8.3 | 0.3 | 7.6 | 9.0 |
| | Juvenile | 9.7 | 0.7 | 8.4 | 11.1 |
| GSS_SHIFT (N=344) | Adult | 5.8 | 0.3 | 5.3 | 6.3 |
| | Juvenile | 7.3 | 0.4 | 6.6 | 8.1 |
| GSS Total (N=334) | Adult | 12.2 | 0.4 | 11.5 | 12.9 |
| | Juvenile | 14.0 | 0.6 | 12.9 | 15.0 |

suggestibility in the 90 and over group (see Table 5). As intelligence increases to average levels, it no longer becomes a factor in predicting suggestibility.

## Relationship of Personality Variables to GSS 1 Variables

In terms of personality characteristics, select MMPI data pertaining to social connectedness (i.e., MMPI-2 and MMPI-A scale 0, or Social Introversion, and scale 8, or Schizophrenia) were collected for 182 individuals (84 additional individuals were administered the MMPI-2 but were not used in the data set because of excessive elevations on validity scales: L, TRIN, VRIN, K, or F[p]), which enabled a comparison for clinical versus subclinical elevations on the MMPI (clinical being defined as a T score of 65 or higher) on Yield 1, Shift, and Total GSS (there were insufficient individuals with Yield 2 and MMPI data for a comparison). MMPI scales 0 and 8 were both selected as personality

Table 5. Correlations of IQ with GSS variables

| Sample | IQ measure | | GSS YIELD1 | GSS YIELD2 | GSS SHIFT | GSS Total |
|---|---|---|---|---|---|---|
| All | FSIQ | Pearson $r$ | −.27** | −.03 | −.08 | −.20** |
| | | $N$ | 293 | 122 | 293 | 293 |
| | VCI | Pearson $r$ | −.22** | −.00 | −.12* | −.21** |
| | | $N$ | 297 | 133 | 297 | 297 |
| | VCIi | Pearson $r$ | −.25** | −.00 | −.12* | −.22** |
| | | $N$ | 314 | 133 | 314 | 314 |
| FSIQ < 90 | FSIQ | Pearson $r$ | −.24** | −.08 | .02 | −.12* |
| | | $N$ | 206 | 85 | 206 | 206 |
| | VCI | Pearson $r$ | −.23** | −.10 | −.09 | −.20** |
| | | $N$ | 212 | 93 | 212 | 212 |
| | VCIi | Pearson $r$ | −.25** | −.10 | −.09 | −.20** |
| | | $N$ | 222 | 93 | 222 | 222 |
| FSIQ > 89 | FSIQ | Pearson $r$ | −.19 | −.13 | −.05 | −.14 |
| | | $N$ | 87 | 37 | 87 | 87 |
| | VCI | Pearson $r$ | −.13 | −.15 | −.13 | −.16 |
| | | $N$ | 85 | 40 | 85 | 85 |
| | VCIi | Pearson $r$ | −.08 | −.15 | −.09 | −.11 |
| | | $N$ | 92 | 40 | 92 | 92 |

*Correlation is significant at the .05 level (two tailed).
**Correlation is significant at the .01 level (two tailed).

Copyright © 2012 John Wiley & Sons, Ltd.                     Behav. Sci. Law (2012)
                                                            DOI: 10.1002/bsl

I. Bruce Frumkin *et al.*

characteristics of interest, as they both measure to varying degrees an individual's alienation from others (Greene, 2011), which would theoretically make them less suggestible. By comparison, an exploration of the psychoticism scale on the MMPI (MMPI PSY) lends evidence that psychotic thinking itself is not responsible for variations in suggestibility, as it was not significant ($F(2, 79) = .237, p = .790$).

A MANOVA for a comparison of MMPI scale 0 clinical versus subclinical scores (clinical defined as T scores of 65 or higher, subclinical defined as below 65) while controlling for intelligence (FSIQ) was significant, $F(2, 143) = 3.413, p < .036$. Univariate tests reveal that individuals with clinical levels of social introversion were less suggestible according to both Yield 1 ($F(1, 144) = 4.574, p < .034, \eta_p^2 = .034$) and Total GSS ($F(1, 144) = 6.581, p < .011, \eta_p^2 = .044$). The effect for GSS Shift was in the predicted direction but did not achieve significance ($F(1, 144) = 3.524, p < .063, \eta_p^2 = .024$). The pattern was the same when not controlling for intelligence, but, as pathology can be correlated with low intelligence (in this sample, $r = -.18$ for MMPI 0 and $-.28$ for MMPI 8), it is important to ensure the observed effect for personality was not truly due to low intelligence.

A MANOVA for a comparison of MMPI 8 clinical versus subclinical scores while controlling for intelligence (FSIQ) only trended towards significance, $F(2, 143) = 2.402$ ($p < .094$), due to the poor performance on Yield 1. Univariate tests reveal that individuals with clinical levels of elevation on this scale were less suggestible according to both Shift ($F(1, 144) = 3.967, p < .048, \eta_p^2 = .027$) and Total GSS, $F(1, 144) = 4.766, p < .031, \eta_p^2 = .032$). The effect for Yield 1 was in the predicted direction but did not achieve significance, $F(1, 144) = 1.614$ ($p < .206$), $\eta_p^2 = .011$. The results illustrate the pattern of more socially alienated personality traits resulting in less suggestibility (when controlling for intelligence).

Scores from the 16PF were also explored, with a particular focus on the Global Factor of Independence, and Primary Factors E (Dominance), H (Social Boldness), and L (Vigilance). A MANOVA conducted with 104 participants for a comparison of the 16PF Factor E (Dominance) scale low, defined as sten scores of 4 and under ($N = 46$), mid-range, defined as sten scores of 5–6 ($N = 45$), and high, defined as sten scores of 7 and higher ($N = 13$), while controlling for intelligence (FSIQ), was significant, $F(4, 200) = 3.208$ ($p < .019$). Univariate tests reveal that Factor E (Dominance) is related to suggestibility in terms of Shift, $F(2, 100) = 5.353$ ($p < .006$), $\eta_p^2 = .098$. Total GSS was close to significance, $F(2, 100) = 2.240$ ($p < .112$), $\eta_p^2 = .043$, but Yield 1 was not, $F(2, 100) = .281$ ($p < .755$), $\eta_p^2 = .006$. A post-hoc comparison of Shift means illustrates the pattern where less dominant or more deferential individuals were more suggestible than the moderately dominant, $t(89) = 4.67$ ($p < .001$), Cohen's $d = .69$, while the highly dominant were very variable in suggestibility (in part due to the relatively small sample size; all estimates controlled for intelligence).

MANOVAs for the other measured 16PF factors were not significant, whether intelligence was controlled for or not (provided statistics are for the analysis where intelligence was included). For the Global Factor of Independence, there was nonsignificance, Pillai's trace $F(4, 138) = .266$ ($p < .266$). For Factor H (Social Boldness), the test was not significant, Pillai's trace $F(4, 200) = .623$ ($p < .647$). With Factor L (Vigilance), it was necessary to drop the low end of the scale due to only four individuals scoring that low, which resulted in a trend toward significance for medium ($N = 24$) and high ($N = 75$), where Pillai's trace $F(2, 95) = 2.254$ ($p < .111$), $\eta_p^2 = .045$. Only GSS Total was significant, but, in all three univariate cases, medium vigilance trended toward being more suggestible than high vigilance, GSS Total

U.S. forensic sample for the GSS

$F(1, 96) = 4.547$ ($p < .036$), $\eta_p^2 = .045$, Shift $F(1, 96) = 3.067$, $p < .083$, $\eta_p^2 = .031$, and Yield 1 $F(1, 96) = 2.314$ ($p < .132$), $\eta_p^2 = .024$. Additionally there is a weak negative relationship between scores on the GSS and measures of understanding and appreciation of Miranda rights (see Frumkin, Lally, & Sexton, in press; Table 8 for details).

## CONCLUSIONS AND IMPLICATIONS

As noted above, the Yield 2 and Shift scores were higher for juveniles, indicating that juveniles are likely more vulnerable to being misled or shifting to different responses given negative feedback than are adults. These results are the same as the research summarized by Gudjonsson (1997, 2003) and are consistent with the results obtained by Loftus, Greene, and Doyle (1989) in the context of eyewitness testimony of children and of Ceci and Bruck (1995) in the context of child sexual abuse interviews, in which the child is sometimes subjected to multiple interviews and repeated questions. Across all of these situations, an association between age and suggestibility has been noted, with younger children being the most vulnerable to suggestion.

Also as noted in the results, intelligence and cognitive factors (FSIQ, VCIi, and WMI) were significantly negatively correlated only with Yield 1, Shift, and Total GSS 1 scores, with the strongest correlations between the various intelligence and cognitive scores and Yield 1. However, when intellectual functioning is in the average range, intelligence seems not to be as large a source of variance in suggestibility. This result is consistent with research summarized by Gudjonsson (2003), in which Yield 1 is more affected by intellectual and cognitive variables. In addition, Gudjonsson's (2003) indication that Yield 2 and Shift (giving in to leading questioning and changing of responses under pressure, respectively) is more related to emotional and personality characteristics is consistent with this study's positive findings in Factor E (Dominance) in the 16PF, in which the submissive, deferential individuals had lower sten scores. Results from the scale 8 and 0 analyses on the MMPI are at first somewhat counterintuitive. One might expect that mentally disordered individuals would be more vulnerable to giving in to leading questions or shifting to different responses under pressure. Yet Gudjonsson and Petursson (1991) and Gudjonsson and Sigurdsson (1999) found that offenders who are most disordered in terms of their personality are also most resistant to confessions, being less cooperative with the police and putting up more initial resistance. This finding then could account for this study's results when analyzing the relationships between suggestibility and Scales 8 and 0 of the MMPI. An interpretation of high scale scores as measuring to some extent feelings of alienation (versus psychoticism, which was not significantly related) would help explain why high scorers on these MMPI scales are less suggestible than those with lower MMPI scale scores. The alienation causes the defendant to be less susceptible to misleading information and external pressure. There could be other explanations as well, and more study is needed in this area. Results show that the effects of a defendant's intelligence were generally more powerful, and suggestibility measures were less impacted by personality. However, the impact of giving into negative feedback, as measured by Shift, is influenced by an individual's submissiveness.

Table 1 shows the comparison of the U.S. Forensic sample with the Gudjonsson British adult court referrals (Gudjonsson & Sigurdsson, 1995), Gudjonsson Icelandic juvenile offenders (Sigurdsson & Gudjonsson, 1996), Gudjonsson British adolescent offenders residing in a secure unit (Richardson et al., 1995), and Gudjonsson British

Copyright © 2012 John Wiley & Sons, Ltd.                    Behav. Sci. Law (2012)
                                                                    DOI: 10.1002/bsl

I. Bruce Frumkin *et al.*

adult alleged false confessors or retracted confessors (Gudjonsson, 1990b). As can be seen, although Yield 1 for the British adult court referral sample is similar to the U.S. Adult Forensic sample, with the U.S. data being a bit higher, the U.S. data show approximately one-quarter to one-half of a standard deviation greater score difference in Yield 2, Shift, and Total GSS. A comparison of the juvenile samples show the U.S. Forensic data matching more closely to the Gudjonsson U.K. Juvenile Offenders, with the U.S. Forensic sample being approximately one-half of a standard deviation higher than that obtained by Gudjonsson.

Although one-half of a standard deviation difference likely makes little clinical difference in how one interprets the GSS 1 using a conservative interpretive strategy as espoused by Frumkin (2010), it is important to remember that the U.S. Forensic sample is substantially different demographically from the Gudjonsson samples, apart from the subjects' country of residence, and is more likely to reflect the actual population undergoing confession-related forensic evaluations in the United States. The U.S. Forensic Juvenile sample had a substantially lower Full Scale IQ than the British adolescent offender group, whose mean WAIS-R Full Scale IQ was 89.3. There was no reported IQ for the Icelandic juvenile offender group. This is not surprising, in that those preselected by defense attorneys, as in this study, for evaluation pertaining to *Miranda* competency or false confession-related issues were likely as a group to have had perceived vulnerabilities and were thus of overall lower intelligence. Second, although the U.S. Forensic sample consisted of protocols from a full range of IQ scores (low 50s to 129), the majority of individuals evaluated had low intelligence test scores, the majority being in the mid-80s or below. Only 6% had IQs 100 and above, and only 16% had IQs 90 and above. Third, the U.S. Forensic Juvenile sample had a mean age of 13.8, compared to the Gudjonsson Icelandic juvenile norms with a mean age of 18. Fourth, the Icelandic group was composed of "juvenile offenders," individuals who had already pled guilty to the offense. When one compares the U.S. Forensic group to the British adolescent offenders group, the age range (10–17) and mean age (15.5) was closer to the U.S. Forensic juvenile sample. The mean GSS scores of the British group are much more similar to the U.S. Forensic sample.

The Gudjonsson (1990b) British alleged false confessor group, 100 individuals who retracted self-incriminating admissions during police interviews, shows remarkable similarity to the U.S. Forensic sample and to the British adult sample of the court referrals group. The reason for initial referral for this British sample was similar to the reason for those referred to the first author of this paper. The mean Full Scale IQ, as measured by the WAIS-R, was 80 and 81 for the British alleged false confessors and the British adult court referrals respectively. The mean age for the alleged false confessor group was 29 (SD = 10). As can be seen in Table 1, the Yield 1, Yield 2, Shift, and Total GSS (calculated by us) are quite similar

In conclusion, the U.S. Forensic sample, for both juveniles and adults, had lower intelligence test scores than all of the Gudjonsson samples, except the alleged false confessor group. As noted above, the lower IQ in the U.S. forensic sample likely reflects that these individuals were specifically referred for evaluations because of confession-related issues. It is impossible to state what differences in mean GSS scores were due to national differences between the U.S. Forensic sample and Gudjonsson's samples in Iceland and Great Britain. It is unlikely that differences in nationality would have been a major source of variance. London is a multicultural city and the differences between Great Britain and the Icelandic samples were not all that great. Intuitively,

Copyright © 2012 John Wiley & Sons, Ltd.                                    Behav. Sci. Law (2012)
                                                                            DOI: 10.1002/bsl

there is little reason to believe that those from the United States are any more suggestible than those residing in the Great Britain or in Iceland. Nevertheless, analysis showed that, when one controlled for age, there was little variance between ethnic groups in the U.S. Forensic sample.

Support for the psychometric properties of the GSS is evident in the fact that the U.S. Forensic sample displayed the same relationships between the GSS variables with age and intelligence as did the norms from Gudjonsson's research. Although the U.S. data showed slightly higher overall mean scores on the suggestibility variables, the elevation was slight and likely clinically not meaningful. When comparing the U.S. Forensic group with the Gudjonsson retracted false confession group, the mean GSS scores are quite similar. This data, using a U.S. population, demonstrated additional convergent validity for the GSS in terms of the observed relationships of greater suggestibility with the cognitive factor of lower IQ, and less suggestibility with social alienation. The personality characteristic of dominance was negatively related to giving in to negative feedback. These results provide a strong counterargument to the contention that the GSS is not appropriate for use with an U.S. population.

It is recommended in using the GSS in the United States that generally the clinician compare the obtained GSS scores with the Gudjonsson (1997) sample for the general population. As Gudjonsson (1997) states, "In order to establish how unusual or abnormal the scores are, they should be compared with those of the general population rather than with those of other forensic populations (e.g., court referrals or prisoners; p. 27)." At this time, clinicians only have available general population norms from Gudjonsson's manual, with the limitations associated with that data set (e.g., located in UK, limitations of a convenience sample). Gudjonsson recognized the use of data from "specialized groups" (court referrals) for secondary analysis. Recognizing this limitation, when the clinician is conducting an evaluation of individuals referred for confession-related issues, it would also be appropriate to compare the obtained GSS scores with the U.S. Forensic sample and Gudjonsson's court referrals and offender groups for adults and juveniles. These are the samples that would most closely match the population being referred for evaluation. The U.S Forensic sample results are also consistent with results obtained by Rogers et al. (2010) in their analysis of GSS scores from inmates in jails in Dallas and Tulsa, with Total GSS mean scores across settings of 12.6. However, Rogers et al did not publish the Yield 1, Yield 2, or Shift scores of this population and so no comparison can be made on those variables. It is important to note that the sample(s) or norm(s) to use for comparison bases must be a clinical decision based on specific characteristics of the individual who is being evaluated and on case-specific information.

The United States Forensic sample of GSS scores provides only one piece of information important for the forensic psychologist to consider when evaluating factors related to the voluntariness or validity of a confession. Because individuals of low intelligence are predisposed to being overly susceptible to police conduct due to their inherent suggestibility, an obtained score in the average range compared to the U.S. Forensic sample should not be interpreted as being in the "average" range of suggestibility to the general population. Rather, it is average compared to people of a lower level of intelligence referred for such an evaluation. Certainly if a defendant's scores on the GSS are substantially higher than the mean score of the U.S. Forensic sample, one can safely interpret a greater interrogative suggestibility than the average person referred for such an evaluation.

Copyright © 2012 John Wiley & Sons, Ltd.            Behav. Sci. Law (2012)
DOI: 10.1002/bsl

1. Bruce Frumkin *et al.*

# ACKNOWLEDGMENTS

We would like to thank Richard Frederick and Gretchen Moy for their assistance in the analysis of the data.

# REFERENCES

Beail, N. (2002). Interrogative suggestibility, memory, and intellectual disability. *Journal of Applied Research in Intellectual Disability, 15*, 129–137. DOI: 10.1046/j.1468-3148.2002.00108x

Butcher, J., Graham, J., Ben-Porath, Y., Tellegen, A., Dahlstrom, W., & Kaemmer, B. (2001). *MMPI-2: Manual for administration, scoring and interpretation*. Minneapolis, MN: University of Minnesota Press.

Butcher, J., Williams, C., Graham, J., Archer, R., Tellegen, A., Ben-Porath, Y., & Kaemmer, B. (1992). *MMPI-A: Manual for administration, scoring, and interpretation*. Minneapolis, MN: University of Minnesota Press.

Cattell, R., Cattel, A., & Cattell, H. (1993). *The Sixteen Personality Factor Questionnaire*. Champaign, IL: Institute for Personality and Ability Testing.

Ceci, S., & Bruck, M. (1995). *Jeopardy in the courtroom: A scientific analysis of children's testimony*. Washington, DC: American Psychological Association.

Crane v. Kentucky, (1986). 476 U.S. 683, 106 S.Ct. 2142.

Daubert v. Merrell Dow Pharmaceuticals, Inc, (1993). 509 U.S. 579.

DeClue, G. (2005). *Interrogations and disputed confessions: A manual for forensic psychological practice*. Sarasota, FL: Professional Resource Press.

Drizen, S., & Leo, R. A. (2004). The problems of false confessions in the post-DNA world. *North Carolina Law Review, 82*, 891–1007.

Frumkin, I. B. (2000). Competency to waive *Miranda* rights: Clinical and legal issues. *Mental and Physical Disability Law Reporter, 24*, 326–331.

Frumkin, I. B. (2008). Psychological evaluation in *Miranda* waiver and confession cases. In R. L. Denney, & J. P. Sullivan (Eds.), *Clinical neuropsychology in the criminal forensic setting* (pp. 135–175). New York: Guilford.

Frumkin, I. B. (2010). Evaluations of competency to waive *Miranda* rights and coerced/false confessions: Common pitfalls in expert testimony. In G. D. Lassiter, & C. Meissner (Eds.) *Police interrogations and false confessions: Current research, practice, and policy recommendations* (pp. 191–210). Washington, DC: American Psychological Association.

Frumkin, I. B., & Garcia, A. (2003). Psychological evaluations and competency to waive *Miranda* rights. *The Champion, 27*, 12–23.

Frumkin, I. B., Lally, S. J., & Sexton, J. E. (in press). The Grisso tests for assessing understanding and appreciation of *Miranda* warnings with a forensic sample. *Behavioral Science and the Law*.

Frye v. United States, 54 App. D.C. 47 (1923).

Fulero, S. (2010). Tales from the front: Expert testimony on the psychology of interrogations. In G. D. Lassiter, & C. Meissner (Eds.), *Police interrogations and false confessions: Current research, practice, and policy recommendations* (pp. 211–224). Washington, DC: American Psychological Association.

Greene, R. L. (2011). *The MMPI-2/MMPI-2:RF: An interpretive manual*. Boston, MA: Allyn and Bacon.

Grisso, T. (1998). *Instruments for assessing understanding and appreciation of Miranda rights*. Sarasota, FL: Professional Resource Press.

Gudjonsson, G. H. (1986). The relationship between interrogative suggestibility and acquiescence: Empirical findings and theoretical implications. *Personality and Individual Differences, 7*, 195–199.

Gudjonsson, G. H. (1989). Compliance in an interrogation situation: A new scale. *Personality and Individual Differences, 10*, 535–540.

Gudjonsson, G. H. (1990a). The relationship of intellectual skills to suggestibility, compliance and acquiescence. *Personality and Individual Differences, 11*, 227–231.

Gudjonsson, G. H. (1990b). One hundred alleged false confession cases: Some normative data. *British Journal of Clinical Psychology, 29*, 249–250.

Gudjonsson, G. H. (1997). *The Gudjonsson Suggestibility Scales manual*. Hove, UK: Psychology.

Gudjonsson, G. H. (2003). *The psychology of interrogations and confessions: A handbook*. Chichester, UK: Wiley.

Gudjonsson, G. H., & Clark, N. K. (1986). Suggestibility in police interrogations: A social psychological model. *Social Behaviour, 1*, 83–104.

Gudjonsson, G. H., & Petursson, H. (1991). Custodial interrogation: Why do suspects confess and how does it relate to their crime, attitude, and personality? *Personality and Individual Differences, 12*, 295–306.

Gudjonsson, G. H., & Sigurdsson, J. F. (1995). The relationship between suggestibility of confabulation to the memory, intelligence, suggestibility and personality of prison inmates. *Nordic Journal of Psychiatry, 49*, 373–378.

U.S. forensic sample for the GSS

Gudjonsson, G. H., & Sigurdsson, J.F. (1999). The Gudjonsson Confession Questionnaire-Revised (GCQ-R): Factor structure and its relationship with personality. *Personality and Individual Differences, 27*(5), 953–968.

Gudjonsson, G. H., Rutter, S., & Clare, I. (1995). The relationship between suggestibility and anxiety among suspects detained at police stations. *Psychological Medicine, 25*, 875–878.

Innocence Project. (2012). Facts on post-conviction DNA exonerations. Retrieved from http://www.innocenceproject.org/understand/False-Confessions.php [10 August 2012].

Kassin, S., & Kiechel, K. (1996). The social psychology of false confessions. A review of the literature and issues. *Psychological Science, 7*, 125–128.

Kassin, S., & Wrightsman, L. (1985). Confession evidence. In S. Kassin, & L. Wrightsman (Eds.) *The psychology of evidence and trial procedures* (pp. 67–94). London: Sage.

Kassin, S. M., Drizin, S. A., Grisso, T., Gudjonsson, G. H., Leo, R. A., & Redlich, A. D. (2010). Police-induced confessions: Risk factors and recommendations. *Law and Human Behavior, 34*, 3–38. DOI: 10.1007/s10979-009-9188-6

Kassin, S. M., Leo, R. A., Meissner, C. A., Richman, K. D., Colwell, L. H., Leach, A. M., & La Fon, D. (2007). Police interviewing and interrogation: A self-report survey of police practices and beliefs. *Law and Human Behavior, 31*, 381–400.

Leo, R. A. (1996). Inside the interrogation room. *The Journal of Criminal Law and Criminology, 86*, 66–303.

Loftus, E. F., Greene, E. L., & Doyle, J. M. (1989). The psychology of eyewitness testimony. In D.C. Raskin (Ed.) *Psychological methods in criminal investigations and evidence* (pp. 3–45). New York: Springer.

McCann, J. (1998). A conceptual framework for identifying various types of false confessions. *Behavioral Sciences & the Law, 16*, 441–453.

Miranda v. Arizona, 384 U.S. 436 (1966).

Oberlander, L. B., Goldstein, N. E., & Goldstein, A. M. (2003). Competence to confess. In A. M. Goldstein (Ed.) *Handbook of psychology: Vol. 11: Forensic psychology* (pp. 335–357). New York: Wiley.

Ofshe, R., & Leo, R. (1997a). The decision to confess falsely: Rational choice and irrational Action. *Denver University Law Review, 74*, 979–1122.

Ofshe, R., & Leo, R. (1997b). The social psychology of police interrogations. The theory and classification of true and false confessions. *Studies in Law, Politics, and Society, 16*, 189–251.

Pollard, D., Trowbridge, B., Slade, P. D., Streissguth, A. P., Laktonen, A., & Townes, B. D. (2004). Interrogative suggestibility in a U.S. context: Some preliminary data on normal subjects. *Personality and Individual Differences, 37*, 1101–1108.

Redlich, A. D. (2007). Double jeopardy in the interrogation: Young age and mental illness. *American Psychologist, 62*, 609–611.

Richardson, G., Gudjonsson, G. H., & Kelly, T. P. (1995). Interrogative suggestibility in an adolescent forensic population. *Journal of Adolescence, 18*, 211–216.

Rogers, R., Harrison, K., Rogstad, J., LaFortune, K., & Hazelwood, L. (2010). The role of suggestibility in determinations of *Miranda* abilities: A study of the Gudjonsson Suggestibility Scales. *Law and Human Behavior, 34*, 66–78. DOI: 10.1007/s10979-009-9186-8

Sigurdsson, J., & Gudjonsson, G. H. (1996). Psychological characteristics of juvenile alcohol and drug users. *Journal of Adolescence, 19*, 41–46.

Sigurdsson, J., Gudjonsson, G. H., Einarsson, E., & Gudjonsson, G. (2006). Differences in personality and mental state between suspects and witnesses immediately after being interviewed by the police. *Psychology, Crime, and Law, 12*, 619–628.

Tepfer, J., Nirider, L., & Tricarico, L. (2010). Arresting development: Convictions of innocent youth. *Rutgers Law Review, 62*(4), 887–941.

White, R., & Wilner, P. (2005). Suggestibility and salience in people with intellectual disabilities: An experimental critique of the Gudjonsson Suggestibility Scale. *Journal of Forensic Psychiatry and Psychology, 16*, 638–650.

Wrightsman, L. S., & Kassin, S. M. (1993). *Confessions in the courtroom*. Newbury Park, CA: Sage.