**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

    v.                                    CASE NO. 6:17-cr-00018-ORL-40KRS

NOOR ZAHI SALMAN,

        Defendant.

### DEFENDANT'S ADDITIONAL BRIEFING ON *CRAWFORD*

In accordance with this Court's instructions at the hearing on January 18, 2018, Defendant, Noor Salman, provides additional briefing on the Confrontation Clause of the Sixth Amendment to the United States Constitution and its application to the statements Omar Mateen made to government authorities on June 12, 2016.

**I.    Legal Background**

The Confrontation Clause of the Sixth Amendment guarantees the right of the accused "to be confronted with the witnesses against him." Initially, the Supreme Court considered whether out-of-court statements bore "adequate 'indicia of reliability'" to determine whether they were admissible under the Confrontation Clause. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). To meet this test, statements had to either fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." *Id.*

Nearly twenty-five years after *Roberts*, however, the Supreme Court completely changed its approach to the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36 (2004); *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011) ("In a pathmarking 2004

1

decision, *Crawford v. Washington*, we overruled *Ohio v. Roberts*."). In *Crawford*, the Supreme Court considered whether a wife's statements to police about her husband were admissible under the Confrontation Clause. The husband, Michael Crawford, stabbed a man who tried to rape his wife, Sylvia Crawford. *Crawford*, 541 U.S. at 38. Michael claimed that he stabbed him in self-defense. *Id.* at 40. In a statement to the police, Sylvia mostly corroborated Michael's account but indicated that Michael stabbed the man before he drew a knife. *Id.* at 39. At trial, Michael claimed spousal privilege so that Sylvia could not testify, and the state sought to introduce Sylvia's statements to the police. *Id.* at 40. Michael argued that this violated his rights under the Confrontation Clause. *Id.* The Washington Supreme Court disagreed. *Id.* at 41.

The United States Supreme Court granted certiorari and used the case to reconsider its Confrontation Clause analysis. It concluded that admitting Sylvia's statement did violate Michael's Sixth Amendment Confrontation Clause rights. But, relying on historical considerations, the Court also discarded the "indicia of reliability" test it had previously applied. *Id.* at 68. Instead, the Court held that "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59.

The Court gave three examples of "'testimonial' statements":

**[1]** [E]*x parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially. . . .

**[2]** [E]xtrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. . . . [and]

**[3]** [S]tatements that were made under circumstances which would lead an

> objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52. The Court refused to choose a single formulation, holding Sylvia's statements were testimonial, and could not be admitted against him. *Id.* at 68-69.

The Court's jurisprudence on the Confrontation Clause continued to evolve as it clarified the meaning of "testimonial." *See Davis v. Washington*, 547 U.S. 813 (2006) *and Michigan v. Bryant*, 562 U.S. 344 (2011). In *Davis*, the Supreme Court considered whether a domestic violence victim's statements in a call to 911 during the emergency were admissible under the Confrontation Clause. 547 U.S. at 817. The victim, Michelle McCottry, called 911 in a panic. *Id.* In response to the 911 operator's questioning, McCottry said, "He's here jumpin' on me again." *Id.* She also identified her assailant as Adrian Davis during the call. *Id.* at 818. After the State charged Davis with a felony, he sought to suppress McCottry's statements under the Confrontation Clause, because McCottry did not testify at trial. *Id.* at 819.

The Supreme Court held that McCottry's statements to the 911 operator were nontestimonial and that the Confrontation Clause therefore did not bar their admission. In so holding, the *Davis* Court gave a fourth illustration of "testimonial statements":

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822. Applying this "primary purpose" test, the Supreme Court concluded that, objectively, the purpose of the 911 call was to respond to an ongoing emergency and not to "'establis[h] or prov[e]' some past fact." *Id.* at 827 (internal citation removed). After all, the

3

victim called to tell the police about what the defendant was doing at the time. *Id.* The *Davis* Court considered the following four factors:

> (1) the content of the declarant's statement, noting that she spoke about events as they were actually happening, rather than describing past events; (2) the perspective of the declarant, who was facing an ongoing emergency, rather than simply reporting a crime; (3) the nature of what was asked and answered, which involved questions and answers relevant to resolve the emergency; and (4) the relative level of informality of the interview, which was conducted by a 911 operator in a chaotic atmosphere.

*Brown v. Jones*, 2015 WL 9946269, at *13 (N.D. Fla. May 14, 2015), *report and recommendation adopted*, 2016 WL 394013 (N.D. Fla. Feb. 1, 2016) (citing *Davis*, 547 U.S. at 827). The Court concluded, applying these factors under the primary purpose test, that McCottry's statements were nontestimonial, and therefore not excludable.

The Court left questions unresolved in *Davis*. These questions included: (1) whose perspectives should courts consider in determining the "primary purpose" of the statement? Only the declarant's perspective or also the interrogating officer's perspective? And (2) what constitutes an ongoing emergency? The Court did not need to resolve these questions, because "the circumstances of McCottry's interrogation objectively indicate[d] its primary purpose was to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 828.

In *Bryant*, however, the Supreme Court attempted to answer the questions that *Davis* left unresolved. *Bryant*, 562 U.S. at 348-49. The *Bryant* Court considered whether a dying murder victim's statements to police after the shooter left were admissible under the Confrontation Clause. *Id.* The shooter, Richard Bryant, shot Anthony Covington at his house. *Id.* at 349. Covington then drove to a gas station. *Id.* Police arrived at the gas station and interrogated Covington as he was dying. *Id.* Covington told the police "Rick shot me" and then

4

died. *Id.* Bryant objected to Covington's statements being admitted at trial under the Confrontation Clause. *Id.* at 350. The Supreme Court held that the statements were nontestimonial and therefore admissible under *Crawford*. *Id.* at 378.

Answering the question of whose perspective matters under *Davis*, the Court explained that "*Davis* requires a combined inquiry that accounts for both the declarant and the interrogator. In many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers." *Id.* at 367-68. The Court also stated, however, that it did not "intend to give controlling weight to the 'intentions of the police.'" *Id.* at 369. It explained that, "[a]t trial, the declarant's statements, not the interrogator's questions, will be introduced to 'establis[h] the truth of the matter asserted,' and must therefore pass the Sixth Amendment test." *Id.* In other words, the goal of the primary purpose test is to establish the primary purpose *of the declarant*. Objectively, both the declarant's perspective and the interrogating officer's perspective might be relevant to this inquiry, but only to the extent they illuminate the declarant's purpose. *See id.* at 367 n.11 (noting that language in *Davis* "was not meant to determine *how* the courts are to assess the nature of **the declarant's purpose**") (italics in original; bold emphasis added).

Regarding the "continuing emergency" part of the *Davis* test, the *Bryant* Court explained that whether there is a continuing emergency depends on the nature of the crime. "Nothing in Covington's responses indicated to the police that, contrary to their expectation upon responding to a call reporting a shooting, there was no emergency or that a prior emergency had ended." *Id.* at 377. But the Court also stressed that the lack of an "ongoing emergency[,]" though an important factor, is neither a necessary nor a sufficient condition for

5

a testimonial statement. *Id.* at 374 ("We reiterate, moreover, that the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'") (quoting *Davis*, 547 U.S. at 822).

Applying the "primary purpose" test in *Bryant*, the Court looked extensively at both the officers' and Covington's perspectives. The Court reasoned that "we cannot say that a person in Covington's situation would have had a 'primary purpose' 'to establish or prove past events potentially relevant to later criminal prosecution.'" *Id.* at 375. It explained that "[t]he questions [the police] asked—'what had happened, who had shot him, and where the shooting occurred,'—were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public." *Id.* at 376. Moreover, there were no markers of formality. The Court viewed the informality as suggesting to a reasonable person in Covington's position "that the interrogators' primary purpose was simply to address what they perceived to be an ongoing emergency, and the circumstances lacked any formality that would have alerted Covington to or focused him on the possible future prosecutorial use of his statements." *Id.* If Covington's actual purpose was to establish facts potentially relevant to a prosecution, he did not give any outward indication of this motive. Thus, the Court concluded, the Confrontation Clause did not bar the admission of the statements.

Considering the "primary purpose" test, the Eleventh Circuit held that a confession to someone other than an authority figure is nontestimonial. *United States v. Rodriguez*, 591 F. App'x 897, 901 (11th Cir. 2015). In *Rodriguez*, the Eleventh Circuit considered whether

6

comments a deceased co-conspirator made to his girlfriend were admissible under the Confrontation Clause. *Id.* at 900. Washington, the co-conspirator, confessed a robbery to his girlfriend, implicating the defendants in the robbery. *Id.* The girlfriend testified about Washington's statements, even though the defendants had not had a prior opportunity to cross-examine Washington. *Id.* The defendants objected that this violated the Confrontation Clause.

The *Rodriguez* court, however, concluded "that the Confrontation Clause was not implicated . . . as the challenged statements were not testimonial in nature." *Id.* at 901. The statements "were from private conversations Washington had with his girlfriend outside the trial context." *Id.* The court explained that "[t]he 'primary purpose' of a statement should be evaluated objectively based upon circumstances and not upon the subjective intent of the individuals involved." *Id.* Since Washington was having a private conversation with his girlfriend, rather than speaking to authorities, he was obviously not motivated "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

While confessions to someone other than police are not testimonial, courts have concluded that confessions to authority figures are testimonial statements under the Confrontation Clause. *People v. Hopson*, 396 P.3d 1054, 1056 (Cal. 2017). In *Hopson*, the California Supreme Court concluded that the confession of a deceased murder accomplice could not be used against the defendant under the Confrontation Clause. *Id.* at 1062. The defendant, Ruthetta Hopson, along with her boyfriend, Julius Thomas, were arrested for murdering her housemate, Laverna Brown. *Id.* at 1056. Thomas "gave a confession to detectives that implicated himself and defendant." *Id.* After confessing, Thomas committed suicide. *Id.* Hopson argued that, under *Crawford*, Thomas's confession should not have been

7

used against her. *Id.* The California Supreme Court agreed. The court noted that "*Crawford* itself identified unconfronted accomplice statements to authorities as 'core testimonial statements that the Confrontation Clause plainly meant to exclude.'" *Id.* at 432. The court observed that the "rule of exclusion applies only to testimonial *hearsay.*" *Id.* (emphasis in original). Because the court concluded "[t]hat the prosecution relied on Thomas's confession to establish the truth of his out-of-court statements[,]" the confession was excludable as testimonial hearsay. *Id.* at 434.

## II.     Analysis and Application

In this matter, the Government tries to shoehorn Mateen's statements in as co-conspirator statements. *See Crawford*, 541 U.S. at 56 (noting that co-conspirator statements in furtherance of a conspiracy are "not testimonial"). The Government, however, has not proffered evidence that there was a conspiracy in which Salman participated. *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975) ("Nonetheless, agreement remains the essential element of [conspiracy], and serves to distinguish conspiracy from aiding and abetting which, although often based on agreement, does not require proof of that fact.").[1] Moreover, Mateen's statements to the 911 operator and Brennan—confessing his crime and explaining his motive—were not in furtherance of any conspiracy. "Spill[ing] the beans" to a non-conspirator "could not have served any conspiratorial purpose." *United States v. Posner*, 594 F. Supp. 923, 927 (S.D. Fla. 1984); *see also Fiswick v. United States*, 329 U.S. 211, 217 (1946) ("Moreover, confession or admission by one co-conspirator after he has been apprehended is not in any

---

[1] To be clear, Defendant contends that the Government has not even shown aiding and abetting by a preponderance of the evidence, but the Government has not attempted to provide evidence of a conspiracy.

sense a furtherance of the criminal enterprise. It is rather a frustration of it."); *Krulewitch v. United States*, 336 U.S. 440, 442 (1949) ("This hearsay declaration, attributed to a co-conspirator, was not made pursuant to and in furtherance of objectives of the conspiracy charged in the indictment, because if made, it was after those objectives either had failed or had been achieved."). Although Mateen was not apprehended, he made statements to police, while surrounded by the police, admitting to the crime and explaining his motives; these statements could not serve any conspiratorial purpose. The Government would have to show a hearsay exception, such as excited utterance as used in *Davis*, or dying declaration as used in *Bryant*. The only hearsay exception the Government could use—statement against penal interest—tends to show that Mateen's statements to the police <u>were</u> a testimonial confession.

Here, Mateen called police after the shooting to confess and explain his motive. His statements to the 911 operator, and later to Andrew Brennan, were testimonial, because the objective circumstances show that his motive was not to seek help during an ongoing emergency but to "to establish or prove past events." *Davis*, 547 U.S. at 822. Although there was an ongoing emergency from the police perspective, Mateen did not call to address the emergency or protect human life. He gave a soliloquy and refused to answer Brennan's and the 911 operator's questions. He called to establish that he did the shooting and to explain his motive. Objectively, a person in Mateen's position would recognize that these facts, told to a police officer, were "potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

All four of the *Davis* factors, objectively considered, weigh in favor of finding that Mateen's statements were testimonial. First, he discussed past events rather than describing something as it was actually happening. He called 911 to say that he did the shooting. He told

Brennan that he had pledged allegiance to Abu Bakr Al-Baghdadi and the self-styled Islamic State. Second, from Mateen's perspective, he was certainly not seeking help for an ongoing emergency. Rather, he called to say what he had done and why he had done it. His primary purpose was to report a crime, albeit his own. Third, although Brennan and the 911 operator wanted to respond to what they believed was an ongoing emergency, "the nature of what was asked and answered" also weighs in favor of finding that Mateen's statements were testimonial. Mateen did not answer any of the questions asked. Instead, he ignored the officers' questions and gave a soliloquy. Finally, Mateen's statement was formal compared to the circumstances in *Bryant* and *Davis*. Although not a post-arrest statement, Mateen spoke mainly in a calm voice and reported his crimes and motive. Mateen, at least, knew that the shooting was over and that all that remained was to take "credit" for his crime and make his demands. This Court can only speculate as to Mateen's subjective intent, but objectively, someone in Mateen's position should reasonably see that confessing to a 911 operator and hostage negotiator is "potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822; *see also Crawford*, 541 U.S. at 36 (noting that "[s]tatements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial). Mateen did not know if he would live or die; applying the *Davis* test in light of *Bryant* and *Hopson*, Mateen's statements were testimonial.

## CONCLUSION

For these reasons, Ms. Salman respectfully requests this Court exclude Mateen's statement to the 911 dispatcher and Andrew Brennan, under the Confrontation Clause of the Sixth Amendment.

Respectfully submitted,

By: /s/ Charles Swift
Charles D. Swift, Pro Hac
Texas Bar No. 24091964
*Pro Hac* Attorney for Noor Salman
833 E. Arapaho Rd., Suite 102
Richardson, Texas 75081
(972) 914-2507

Linda Moreno
Linda Moreno, P.A.
Florida Bar No. 0112283
Attorney for Noor Salman
511 Avenue of the Americas, No. 312
New York, New York 10011
(813) 247-4500

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Defendant's Additional Briefing on *Crawford* was sent by CM/ECF delivery on January 29, 2018, to all counsel or parties of record on the service list.

By: /s/ Charles Swift
Charles D. Swift, Pro Hac
Texas Bar No. 24091964
*Pro Hac* Attorney for Noor Salman
833 E. Arapaho Rd., Suite 102
Richardson, Texas 75081
(972) 914-2507
