UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

NOOR ZAHI SALMAN,

Defendant.

CASE NO. 6:17-cr-00018-ORL-40KRS

MOTION FOR RECONSIDERATION OF
SUPPRESSION MOTION IN LIGHT OF TESTIMONY AT TRIAL

This Court previously denied Noor Salman's motion to suppress (Doc. 203) in part because—although Salman "asked when she could return to her apartment"—she "did not ask to leave [the Fort Pierce FBI office] or to be taken to any other location." At trial, however, Agent Christopher Mayo testified that Salman said she wanted "to go home." Agent Mayo also could not recall if he ever sent Ms. Salman's consents to search her apartment and her car to the agents on the scene at her apartment. The testimony is clear that, instead of relying on Ms. Salman's consents, agents waited until to obtain a warrant. In light of this changing and evolving testimony at trial, Ms. Salman respectfully requests that this Court reconsider its denial of her suppression motion and suppress the statements she allegedly made to Agent Mayo and Agent Ricardo Enriquez.

At the suppression hearing, Agent Mayo testified that Salman "asked [him] when she could go back to her apartment." Suppression Transcript 143:22-23. He says that he told her that "nobody could enter the apartment" because "they were applying for a

1

search warrant." *Id.* 143:23-25. At that point, he says, Salman asked to sign a consent to search her apartment. *Id.* 144:2-5. Later, when asked if Salman had "the means to" leave, Agent Mayo testified: "Yes, but I don't know. It never really came up. She never asked. So it never came up." *Id.* 179:4-7. In other words, Agent Mayo testified that Salman asked "when" her apartment would be available but "never" asked to go home or to leave.

At trial, however, Agent Mayo's testimony was subtly, but significantly, different. He testified that Ms. Salman stated, "I want to go home" and asked to sign a consent form so that she could return home. This statement—"I want to go home"—is different from Salman's asking "when" she could go home, especially in light of Agent Mayo's subsequent testimony at the suppression hearing that Salman's desire to leave "never came up" and that Salman "never asked" to leave. Suppression Transcript 179:4-7.

This is not a distinction without a difference. This Court, in its order denying Ms. Salman's suppression motion, held that Salman was not seized under the Fourth Amendment or in custody under the Fifth Amendment, reasoning in part that Agent Mayo "asked if [Salman] was okay, and [she] asked when she could return to her apartment. **She did not ask to leave** or to be taken to any other location." Doc. 203 at 33 (emphasis added).

Other courts have also considered a defendant's ability to leave significant under the Fourth Amendment. *See, e.g.*, *United States v. Melo*, 701 F. Supp. 1254, 1258 (E.D. Va. 1988). In *Melo*, the court held that the "defendant was seized, for purposes of the Fourth Amendment, by [DEA agents] when he was told to accompany them to the police

station." *Id.*[1] It started by noting that "[w]hether or not a seizure has occurred depends on whether a reasonable person would have felt free to leave." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Mendenhall*, 446 U.S. 544 (1980)). In its analysis, the court explained that the agents "even admitted in their testimony that, had defendant asked to leave, they would not have allowed it." *Id.* This fact was significant in his determination that there was a seizure under the meaning of the Fourth Amendment.

Agent Mayo also testified that he did not recall communicating Salman's consent to search to anyone at the scene of her apartment. Bret Chabot, an evidence recovery agent at Salman's home, testified that he never heard that Salman had granted a consent to search her vehicle. This new testimony is significant, because, as noted above, Agent Mayo now testifies that Salman wanted to go home. By not communicating Salman's consent to agents at Salman's apartment, Salman's detention became a seizure and became custodial.

In light of Agent Mayo's and others' changing and evolving testimony, Ms. Salman respectfully requests that this Court reconsider the motion to suppress and suppress the statements she allegedly made to agents Mayo and Enriquez after she asked to go home and was told that she could not.

Respectfully submitted,

By: /s/ Charles Swift<br>
Charles D. Swift, Pro Hac<br>
Texas Bar No. 24091964<br>
*Pro Hac* Attorney for Noor Salman<br>
833 E. Arapaho Rd., Suite 102

---

[1] Although the *Melo* court concluded that the seizure, which took place at an airport, was reasonable, this Court concluded that Salman was not seized, so it did not fully address this question.

Richardson, Texas 75081<br>(972) 914-2507

## CERTIFICATE OF SERVICE

On March 18, 2018, I electronically filed the forgoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

*/s/ Charles D. Swift*
Charles D. Swift, Pro Hac Attorney for Noor Salman
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75074
cswift@clcma.org
(972) 914-2507

4